Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-09-00377-CV

## IN THE ESTATE OF MILDRED VRANA, DECEASED

From the County Court, Jim Wells County, Texas
Trial Court No. 6949-A
Honorable Joe Loving, Jr., Judge Presiding[1]

Opinion by: Sandee Bryan Marion, Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed: November 17, 2010

AFFIRMED

This is an appeal from a judgment in a probate case awarding attorneys' fees and costs to the appellees after they secured the removal of the appellant as executor of Mildred Vrana's estate. We affirm the trial court's judgment.

### BACKGROUND

Mildred Vrana owned 573.39 acres of land known as the Rozypal Ranch. When Vrana died on June 28, 2003, the Rozypal Ranch was worth more than one million dollars and constituted the main asset of Vrana's estate. Vrana's son, John Patrick Rozypal ("John"), and Vrana's two daughters, Mary Jane Rozypal ("Mary Jane") and Judy Odom ("Odom"), each

---

[1] The Honorable Joe Loving, a statutory probate court judge sitting by assignment, signed the judgment in question.

received a one-fifth share of Vrana's estate pursuant to the terms of Vrana's will. Vrana's daughter Linda Gilbreath also received a one-fifth share of Vrana's estate under the will, but Linda predeceased her mother. Due to Linda's death, her two children, Malcolm Gilbreath ("Malcolm") and Ginny Fienga ("Fienga"), each received a one-tenth share of Vrana's estate. John was appointed independent executor of Vrana's estate on October 24, 2005.[2]

The Rozypal Ranch serves as the base of operations for John's oilfield waste and recycling business, Osage Environmental, Inc. Although Osage has used the Rozypal Ranch as its base of operations since Vrana's death, it has failed to pay either Vrana's estate or Vrana's beneficiaries for its use of the property. To date, Osage has purportedly strip mined more than 40,000 cubic yards of caliche from the Rozypal Ranch and dumped approximately 80,000 cubic yards of oilfield waste onto the ranch.

Odom became concerned that John was not adhering to his obligations as executor of Vrana's estate and hired an attorney in November 2005. After her attorney investigated John's administration of the estate, Odom challenged the inventory, appraisement, and list of claims John filed in connection with his duties. According to Odom, she believed John had underrepresented the value of Vrana's estate by failing to include any consideration for the rents he should have paid to the estate for his business's use of the Rozypal Ranch. Although the trial court held a hearing on Odom's objections, it failed to issue a ruling on them.

Malcolm, Fienga, and Mary Jane hired counsel of their own in August 2006. On August 18, 2006, attorneys from Bracewell & Giuliani sent John a letter demanding that he comply with

---

[2] As the named executor, Rozypal "had statutory and fiduciary duties to protect the interests of the devisees." *See In re Estate of Head*, 165 S.W.3d 897, 902 (Tex. App.—Texarkana 2005, no pet.). Rozypal was "charged with the duty to use reasonable care in that he [had to] care for the property of the estate as a prudent man would take care of his own property." *See Lee v. Lee*, 47 S.W.3d 767, 796 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *see also* TEX. PROB. CODE ANN. § 230 (West Supp. 2010).

his statutory obligations as executor or remove himself as executor. The firm attached a copy of the "Original Petition and Application to Remove Independent Executor" it planned to file against John if he did not comply with Malcolm's, Fienga's, and Mary Jane's request. The pleading alleged John was using the Rozypal Ranch for his own personal profit by operating his oilfield waste and recycling business on the property without paying any compensation to the estate. It further alleged John and Osage were depleting the market value of the ranch and operating in violation of the regulations promulgated by the Texas Railroad Commission.[3] The pleading sought multiple forms of relief from the trial court, including: (1) an order requiring John to provide a verified accounting of the estate's debts and assets; (2) the imposition of a constructive trust on all estate property currently in John's possession; and (3) the removal of John as executor of Vrana's estate pursuant to section 149C of the Texas Probate Code.[4] The pleading also raised claims against John for breach of fiduciary duty, conversion, waste/depletion of assets, tortious interference with inheritance rights, and conspiracy to interfere with inheritance rights. When John failed to comply with Malcolm's, Fienga's, and Mary Jane's

---

[3] The petition alleges John's and Osage's use of the Rozypal Ranch may have potentially exposed the estate and its beneficiaries "to environmental claims or liabilities."

[4] Probate Code § 149C provides, in pertinent part, that on the motion of an interested person, which includes a beneficiary of an estate, a court may remove an independent executor when:

> (1) the independent executor fails to return within ninety days after qualification, unless such time is extended by order of the court, an inventory of the property of the estate and list of claims that have come to the independent executor's knowledge;
>
> (2) sufficient grounds appear to support belief that the independent executor has misapplied or embezzled, or that the independent executor is about to misapply or embezzle, all or any part of the property committed to the independent executor's care;[or] . . . .
>
> (5) the independent executor is proved to have been guilty of gross misconduct or gross mismanagement in the performance of the independent executor's duties.

TEX. PROB. CODE ANN. § 149C(a) (West Supp. 2010).

request, Bracewell & Giuliani filed the "Original Petition and Application to Remove Independent Executor" in December 2006. Odom subsequently intervened in the litigation.[5]

After a statutory probate judge was assigned to hear all contested issues in the case, Malcolm, Fienga, and Mary Jane opted to file a separate "Motion to Remove John Patrick Rozypal as Independent Executor" on March 13, 2007. After a hearing on June 4, 2007, the statutory probate judge removed John as the executor of Vrana's estate and appointed a dependent administrator to continue the administration of the estate. The trial court's order reflects it removed John as executor because: (1) sufficient grounds appear to support belief that he has misapplied or embezzled, or that he is about to misapply or embezzle, all or part of the property committed to his care; and (2) he is proved to have been guilty of gross misconduct or gross mismanagement in the performance of his duties. After John's removal, the parties entered an agreed motion to abate the case.

Following the agreed abatement, the Beneficiaries sought reimbursement of their attorneys' fees and costs in securing John's removal as executor. Malcolm, Fienga, and Mary Jane claimed they incurred $161,316.75 in attorneys' fees and costs in seeking John's removal, while Odom sought reimbursement for $32,500 in attorney's fees and costs. The trial court lifted its abatement for the limited purpose of resolving the attorneys' fees issue and proceeded to hold an evidentiary hearing. After hearing the testimony of counsel for the Beneficiaries, the trial court requested additional briefing from the parties. Upon receiving this briefing, the trial court ruled in favor of the Beneficiaries. The trial court awarded Malcolm, Fienga, and Mary Jane attorneys' fees and costs in the amount of $153,162.45, while Odom was awarded $16,250. The trial court entered a severance order and this appeal followed.

---

[5] For purposes of this opinion, we will refer to Malcolm, Fienga, Mary Jane, and Odom collectively as "the Beneficiaries."

**DISCUSSION**

John challenges the trial court's award of attorneys' fees and costs to the Beneficiaries. He raises three complaints on appeal: (1) the trial court had no legal basis to award attorneys' fees to the Beneficiaries; (2) there is insufficient evidence to support the attorneys' fees and costs awarded by the trial court to Malcolm, Fienga, and Mary Jane; and (3) the award of attorneys' fees to Malcolm, Fienga, and Mary Jane was based upon evidence of unsegregated fees.

**PROBATE CODE § 245**

John claims the trial court had no legal basis to award attorneys' fees to any of the Beneficiaries because they are not entitled to recover their attorneys' fees for securing his removal as executor. John maintains that "it is the *estate* which is entitled to reimbursement of [its] costs and fees, not the beneficiaries directly." We disagree.

"The availability of attorney's fees under a particular statute is a question of law for the court." *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). We review purely legal questions *de novo*. *In re Estate of Hawkins*, 187 S.W.3d 182, 185 (Tex. App.—Fort Worth 2006, no pet.). "Our primary objective when construing a statute is to ascertain and give effect to the Legislature's intent." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). We may consider the objective the law seeks to obtain and the consequences of a particular construction. *Id.* "[S]tatutes providing for the recovery of attorney's fees must be strictly construed." *In re Estate of Van Meter*, No. 2-08-289-CV, 2009 WL 885955, *3 (Tex. App.—Fort Worth 2009, no pet.) (mem. op.).

Under section 245 of the Texas Probate Code, a court may assess reasonable attorneys' fees against the personal representative of the estate when the representative is removed for

cause or in an action to obtain the representative's compliance with a statutory duty. Section 245 of the Probate Code states:

> When a personal representative neglects to perform a required duty or if a personal representative is removed for cause, the personal representative and the sureties on the personal representative's bond are liable for:
>
> (1) costs of removal and other additional costs incurred that are not authorized expenditures, as defined by this code; and
>
> (2) reasonable attorney's fees incurred in removing the personal representative or in obtaining compliance regarding any statutory duty the personal representative has neglected.

TEX. PROB. CODE ANN. § 245 (West Supp. 2010). The statute, however, is devoid of any language limiting the right to recover attorneys' fees only to the estate. The plain language of the statute thus does not appear to support John's argument.

Prior to the Legislature's amendment of the statute in 1983, section 245 allowed for the recovery of "costs" incurred in connection with the removal of a personal representative, "which courts had interpreted to exclude attorney's fees." *Colonial Am. Cas. & Surety Co. v. Scherer*, 214 S.W.3d 725, 733 (Tex. App.—Austin 2007, no pet.). To make attorneys' fees recoverable under section 245, the Legislature amended the statute to explicitly allow for the recovery of such fees. *Id.* By amending the statute to subject all personal representatives to liability for reasonable attorneys' fees associated with their removal or obtaining their compliance with a statutory obligation, the Legislature took measures to ensure that personal representatives bore the expense of their misconduct. If we were to adopt John's interpretation of section 245, some personal representatives would not be held accountable for attorneys' fees simply because someone other than the estate sought their removal. We believe such an outcome is nonsensical given the Legislature's past amendment of the statute to overrule prior decisions that denied

recovery of attorneys' fees made necessary because of the acts or omissions of the personal representative.[6]

John directs us to *Lee v. Lee*, 47 S.W.3d 767 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) as support for his interpretation of the statute. In *Lee*, the Fourteenth Court of Appeals noted, "[c]ase law has held that a party seeking recovery under section 245 must present evidence to enable the court to determine what fees are recoverable *by the estate*." *Id*. at 796 (emphasis added). Although an estate may seek recovery of attorneys' fees under section 245, we do not agree that such recovery is limited to estates; therefore, we decline to follow *Lee* to the extent it so holds. John's second issue on appeal is overruled.

### SEGREGATION OF ATTORNEYS' FEES

John also claims we must set aside the award of attorneys' fees to Malcolm, Fienga, and Mary Jane because they failed to segregate the fees attributable to those claims for which fees are recoverable from those for which they are not.[7] A party may not recover attorneys' fees from an opposing party unless an award of attorneys' fees is authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). We review *de novo* a trial court's determination of whether a plaintiff is entitled to attorneys' fees under a particular statute. *See Holland*, 1 S.W.3d at 94. "Whether and the extent to which attorney's fees can be segregated is a mixed question of law and fact, and if segregation is possible, remand is required." *Osborne v. Jauregui, Inc.*, 252 S.W.3d 70, 76 (Tex. App.—Austin 2008, pet. denied).

---

[6] *See id.* Additionally, adopting John's interpretation of the statute would lead to an absurd result in this case. If Vrana's estate was the only party able to recover attorneys' fees under section 245, John, as a one-fifth beneficiary of Vrana's estate, would receive a share of any attorneys' fee awarded to the estate. John would thus unfairly profit from his own acts or omissions if we adopted his interpretation of the statute.

[7] John's argument does not address the order granting $16,250 in attorneys' fees to Odom. Accordingly, we decline to address whether Odom's attorneys' fees were properly segregated. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

The Supreme Court, in *Tony Gullo Motors*, reaffirmed the general rule requiring segregation of attorneys' fees. The court held intertwined facts underlying claims for which attorneys' fees are recoverable and unrecoverable do not excuse a party from segregating fees between claims—"it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Tony Gullo Motors*, 212 S.W.3d at 313–14; *see Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (per curiam) (stating *Tony Gullo Motors* holds "a prevailing party must segregate recoverable from unrecoverable attorney's fees in all cases"). Thus, the general duty to segregate fees applies unless a party meets its burden of establishing that the same discrete legal services were rendered with respect to both a recoverable and unrecoverable claim. *Tony Gullo Motors*, 212 S.W.3d at 313–14; *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

At the hearing on the issue of attorneys' fees, the trial court heard testimony from Malcolm's, Fienga's, and Mary Jane's lead attorney, Douglas Daniels. Daniels is a partner in the trial section of the law firm of Bracewell & Giuliani in Houston, Texas. Daniels stated his firm's "ultimate objective" during the underlying litigation was to secure John's removal as executor. Although his clients raised multiple other claims below, including a request to obtain John's compliance with his statutory duties as executor, Daniels stated these were "back-stops or second options."

Daniels acknowledged during his testimony that the Probate Code does not allow for the recovery of attorneys' fees for "every[] single thing we do." With this in mind, he reviewed the case file, his email archives, and billing records to make sure his clients were reimbursed for only those services that were recoverable under the statute. Daniels provided details about

services rendered from the investigatory stage through John's removal as executor. He explained that the legal work his firm provided in the removal action mutually supports his clients' other causes of action and "that it would not be possible to segregate."

A review of the record indicates the evidence the Beneficiaries relied upon during the removal action to establish John embezzled, mismanaged, and misapplied the property of the estate is probative of their breach of fiduciary duty, conversion, waste/depletion, and tortious interference claims, as well as their need for a constructive trust and verified accounting. Moreover, it is evident that the removal action and the Beneficiaries' severed claims are all dependent upon the same set of facts or circumstances. The record shows Daniels discussed various aspects of his firm's legal services and testified about how each of these services related to removing John as executor. He explained that while his firm's primary objective was to secure John's removal as executor, the legal services his firm performed in connection with the removal mutually advanced his clients' other claims. We believe Daniels's testimony sufficiently demonstrates that all of the work Bracewell & Giuliani performed to secure John's removal was so inextricably intertwined with its clients' other severed claims that the fees could not be segregated. On this record, we conclude there is sufficient evidence to support the exception to the general duty to segregate and we overrule John's first issue.

SUFFICIENCY OF THE EVIDENCE

Lastly, John challenges the sufficiency of the evidence to support the fees and costs awarded to Malcolm, Fienga, and Mary Jane.[8] A determination of reasonable attorneys' fees is a question for the trier of fact. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991). The amount of a fee award rests in the sound discretion of the trial court, and the court's

---

[8] John's argument does not address the reasonableness of the attorneys' fees and costs awarded to Odom. We therefore need not address this issue on appeal. *See* TEX. R. APP. P. 38.1(i).

judgment will not be reversed on appeal absent a clear abuse of discretion. *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 445–46 (Tex. App.—El Paso 2004, no pet.). "Even though the appropriate standard of review is abuse of discretion, we may nevertheless review a fee award for sufficiency of the evidence." *Id.* at 446. This hybrid analysis requires the following two-pronged inquiry:

> Did the trial court have sufficient information upon which to exercise discretion and, if so, did the trial court err in the application of its discretion? The traditional sufficiency review comes into play with regard to the first question; however, our inquiry cannot stop there. We must proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable.

*Id.*

Among the factors most frequently considered in determining the reasonableness of attorneys' fees are: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services;[9] (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Importantly, a litigant is not required to present evidence on each of these factors. *Burnside Air*

---

[9] This factor usually refers to "the amount charged by [other attorneys] in the locality doing similar work." *Brazos County Water Control & Improvement Dist. No.1 v. Salvaggio*, 698 S.W.2d 173, 178 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). "To require that an attorney know the usual and customary reasonable fees in every individual county or city within the area of a trial court would be unduly restrictive." *Id.*

*Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 898 (Tex. App.—Dallas 2003, no pet.); *Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  The trier of fact may also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties in determining the reasonableness of the attorneys' fees.  *Burnside Air Conditioning*, 113 S.W.3d at 897.

Although John asserts Malcolm, Fienga, and Mary Jane failed to introduce sufficient testimony to support the trial court's award of $153,162.45 for attorneys' fees and costs, the record does not support his contention.  The record shows Daniels provided testimony about the different types of services his firm provided in connection with its representation of Malcolm, Fienga, and Mary Jane.  He stated that removing an executor is a difficult task, which requires "a lot of proof" that is credible.  Daniels noted the present matter was akin to a business dispute, requiring the recreation of various business transactions to explain why John's actions justified removal.  Daniels stated the case was not a "run-of-the-mill" probate dispute and involved a unique issue concerning an environmental regulatory concern that could potentially expose the estate to liability.

Daniels testified he analyzed each bill generated by his firm from August 2006 through June 2007 to ensure that the time spent by his attorneys was necessary and reasonable for the work performed.  His firm charged Malcolm, Fienga, and Mary Jane an hourly rate of $215 to

$450 per hour per attorney and $125 to $190 per hour per legal assistant.[10] Daniels indicated his firm performed legal services in this case throughout South Central Texas including the areas of Houston, San Antonio, Austin, Corpus Christi, and Alice. He stated the hourly rates his firm charged were consistent with what "comparable firms handling comparable matters[] in this state would charge." Daniels, however, acknowledged that his firm's rates are "somewhat" higher than the standard rate charged by attorneys working in the specific locality of Jim Wells County.[11]

Daniels stated his firm billed the clients for 488.75 hours of labor to secure John's removal as executor. According to Daniels, "the actual hours worked on the file are more than what is reflected . . . in the bill." Daniels testified the total amount of fees charged in connection with securing John's removal was $151,732.50 and that such amount is reasonable based upon the result obtained and his education, training, knowledge, and experience. Besides these legal fees, Daniels testified his firm billed Malcolm, Fienga, and Mary Jane $12,890.75 for various costs and expenses incurred during the course of its representation.

In light of Daniels's testimony, we believe the trial court had sufficient evidence before it to support an award of $153,162.45 to Malcolm, Fienga, and Mary Jane for attorneys' fees and costs. Although John criticizes Daniels's testimony for failing to address each of the *Arthur Andersen* factors, testimony addressing each of the factors is not required because the factors are

---

[10] Daniels testified each person on the legal team was utilized for his or her particular skill set and stated that the "time table on which we did this," the "complex transactions that had to be analyzed," and the value of the estate justified the firm's utilization of multiple attorneys to represent Malcolm, Fienga, and Mary Jane. He testified the firm attempted to use the services of attorney Kathleen Baird, who had the lowest attorney billing rate ($215 per hour), to perform "as much preliminary drafting and research and things like that" in an effort to save the clients money. His testimony shows that only one attorney from Bracewell & Giuliani billed at a rate above $370 per hour. Daniels testified one of his firm's attorneys, Timothy Wilkins, an expert in environmental law issues, billed a quarter of an hour at $400 per hour and another hour at $450 per hour.

[11] Odom's attorney testified at the hearing that a normal and customary rate in Jim Wells County is about $250 per hour.

simply guidelines for the court to consider. *See Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.). John's third issue on appeal is therefore overruled.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

Sandee Bryan Marion, Justice