

# NUMBER 13-11-00479-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DEBORAH MCDONALD, Appellant,

v.

DONNA FOX, Appellee.

## On appeal from the County Court at Law No. 2
of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Rodriguez

This is an appeal from the jury's verdict that appellant Deborah McDonald breached her mediated settlement agreement with appellee Donna Fox. By four issues, McDonald argues that: (1) the evidence was insufficient to support the award of attorneys' fees to Fox; (2) the evidence was insufficient to support the amount of contract

damages awarded to Fox; (3) the trial court abused its discretion in admitting the mediator's report regarding the settlement; and (4) the mediated settlement agreement was not enforceable as a matter of law. We affirm.

## I. Background

McDonald and Fox are sisters. When their mother died in May 2009, Fox was appointed temporary administrator of their mother's estate. McDonald then attempted to probate their mother's will. Fox contested the will and obtained a temporary injunction to stop distribution of the proceeds of their mother's life insurance policy to their brother John Fox, the named beneficiary. The trial court ordered the parties to mediation to resolve their disputes over the disposition of their mother's estate.

The mediation was held in early January 2010. At the conclusion of the mediation, a settlement agreement was signed by the parties. The agreement purportedly awarded to Fox the entire amount of the life insurance policy, a Wells Fargo bank account, and an ING account. The name of the parties' other brother, Fred Fox, had been crossed out as an additional recipient of the life insurance proceeds. The agreement also provided that, upon releases signed by McDonald and John Fox to their interests in the life insurance proceeds, Fox would deed her interest in the parties' mother's house to John Fox.

In the days and weeks following the mediation, a dispute arose between the parties over the terms of the agreement. McDonald and John Fox objected to the deletion of Fred Fox as a recipient of the life insurance proceeds, contending they had never agreed to the cross-out of his name in the settlement agreement. The parties attempted further mediation over the phone, but negotiations eventually broke down

2

when McDonald and John Fox refused to sign their releases to the life insurance proceeds. In April 2010, Fox filed suit against McDonald and John Fox for breach of the settlement agreement.

In her suit, Fox alleged that McDonald and John Fox breached the settlement agreement when they refused to sign their releases to the life insurance proceeds, which prevented enforcement and execution of the remainder of the settlement agreement. In January 2011, Fox's suit was tried to a jury, which found that: the settlement agreement gave Fox the life insurance proceeds, the Wells Fargo bank account, and the ING account; McDonald and John Fox failed to comply with the settlement agreement; McDonald and John Fox's failure to comply was not excused; and $199,060.78 would fairly and reasonably compensate Fox for her damages. The jury also awarded Fox attorney's fees for the services of each of her attorneys in preparing for trial: $66,287.24 for Monte English's services; and $10,670.38 for Brenda Baker's services.[1]

McDonald and John Fox filed a motion for judgment notwithstanding the verdict and motion to disregard the jury's answer, arguing, in relevant part, that there was no evidence to support the attorney's fees awarded for English's services; the jury's damages finding should be reduced to reflect that Fox failed to perform her obligation under the agreement to deed her interest in the mother's house to the defendants; and the agreement was unenforceable as a matter of law. The trial court denied McDonald and John Fox's motions and entered judgment for Fox in the amount of $281,608.00, which included the damages award, the attorney's fees for both English and Baker, and

---

[1] The jury also awarded fees for English's services in the event of an appeal, but McDonald does not challenge that portion of the fee award.

$5,589.60 in prejudgment interest.   This appeal followed.

## II.   Attorney's Fees

By her first issue, McDonald argues that the evidence was legally and factually insufficient to support the reasonableness of the attorney's fees awarded for English's services.   Specifically, McDonald argues that there was no evidence offered of the work performed by English or of the reasonableness of shifting the contingency fee English and Fox agreed on to McDonald.   McDonald also argues that Fox failed to segregate English's fees.

### A.   Reasonableness of Fees

We review a jury's finding of the amount of reasonable and necessary attorney's fees incurred for sufficiency of the evidence.   *Carlile v. RLS Legal Solutions, Inc.*, 138 S.W.3d 403, 409 (Tex. App.—Houston [14th Dist.] 2004, no pet.).   "We must be mindful, however, that we are reviewing a jury's verdict and may not substitute our judgment for that of the fact[]finder." *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

We will sustain a legal-sufficiency or no-evidence challenge if the record shows: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence establishes conclusively the opposite of a vital fact.   *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).   When reviewing a no-evidence challenge, we view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable

4

fact-finder could not. *Id.* at 807. The ultimate test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to make the finding under review. *Id.* at 827.

In reviewing a factual-sufficiency challenge to a jury finding on an issue on which the appellant did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 469-70 (Tex. App.—Corpus Christi 2008, pet. denied).

In determining whether an attorney's fee award is reasonable, we consider the following factors: (1) the time and labor required, novelty, and difficulty of the question presented and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04; *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990)). A litigant is not required to present evidence on each of these factors. *In re Estate of Vrana*, 335 S.W.3d 322, 329-30 (Tex. App.—San Antonio 2010, pet. denied) (citing *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 898 (Tex. App.—Dallas 2003, no

pet.); *Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). Rather, we look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties in determining the reasonableness of the fee award. *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 767 (Tex. App.—Corpus Christi 2004, no pet.).

> [A] contingency fee agreement alone cannot support an award of attorney's fees. . . . [W]hile a contingent fee may be a reasonable fee from the standpoint of the parties to the contract, i.e., a plaintiff and his lawyer, . . . the mere fact that a party and a lawyer have agreed to a contingent fee [does not] mean[] that the fee arrangement is in and of itself reasonable for purposes of shifting that fee to the defendant. . . . [A]lthough a party's contingent fee agreement should be considered by the fact[]finder, a determination of the reasonableness of the fee must [still] take into consideration the factors required by [Texas Disciplinary Rule of Professional Conduct 1.04 and *Arthur Andersen*].

*Mercier v. Sw. Bell Yellow Pages, Inc.*, 214 S.W.3d 770, 777-78 (Tex. App.—Corpus Christi 2007, no pet.) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04; *Arthur Andersen*, 945 S.W.2d at 818-19). In other words, "[t]he plaintiff cannot simply ask the jury to award a percentage of the recovery as a fee; without evidence of the [Arthur Andersen factors], the jury has no meaningful way to determine if the fees were in fact reasonable and necessary." *Transcont'l Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 675 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (citing *Arthur Andersen*, 945 S.W.2d at 818-19).

Here, the attorney's fees question submitted to the jury specified the eight *Arthur Andersen* factors as factors the jury may have considered in determining what a reasonable fee would be for English's services. The jury awarded $66,287.24 for

6

English's fees for preparation and trial. And having reviewed the trial record, we believe there was sufficient evidence of most of the *Arthur Andersen* factors such that the jury could have determined that $66,287.24 was reasonable.

The testimony at trial established that English became involved with the dispute in January 2010 when it became apparent to Fox that McDonald and John Fox were disputing the terms of the settlement agreement. This is evidence of the sixth factor, the nature and length of the professional relationship between English and Fox.

Brenda Baker, Fox's probate attorney who had represented Fox in the mediation, testified that she referred Fox to English for representation in the breach-of-contract suit because English had unique experience trying cases involving the enforcement of settlement agreements. Baker testified that English's reputation as a trial lawyer was "sterling" and that he had tried hundreds of cases in his thirty years as a lawyer. This is evidence of the first and seventh factors.

Baker testified that Fox and English entered into a contingency fee agreement in which Fox agreed to pay English one-third of any award she recovered in her suit; Baker testified Fox would not have been able to afford English's services without a contingency agreement. Baker also testified that the one-third contingency fee was a customary fee in cases like Fox's. The contract between Fox and English outlining the contingency fee was admitted into evidence. The jury's award of $66,287.24 for English's fees in preparing for trial was approximately one-third of the $199,060.78 in damages awarded to Fox. The foregoing is all evidence relating to the third and eighth factors.

Baker then testified that the amount of money involved in the case was significant; other evidence at trial established that the value of the life insurance policy and bank

7

accounts involved exceeded $200,000. This is evidence relating to the fourth factor.

Finally, Baker testified that the circumstances of the case made time of the essence. She testified that the dispute over the settlement agreement prevented any resolution of the will contest and that the estate's assets were depleting as the dispute between the siblings continued. This is evidence relating to the fifth factor.

McDonald argues that because there was no testimony about the time English spent on the case, the jury's award was not reasonable. We note that, while there was no specific testimony about the hours English spent on the case, time spent working on the case is only one consideration for the first *Arthur Andersen* factor. There was testimony that enforcement of settlement agreements is a novel and difficult subject-matter and that English had the particular skills to handle such a case. Regardless, evidence need not be submitted to support every factor. *See In re Estate of Vrana*, 335 S.W.3d at 329-30; *see also Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 684-85 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding that evidence of attorneys' fees was sufficient despite failure of evidence to address each *Arthur Andersen* factor); *see also McAlester Fuel Co. v. Carpenter*, No. 01-07-00653-CV, 2009 WL 417301, at *6 (Tex. App.—Houston [1st Dist.] Feb. 19, 2009, pet. dism'd) (mem. op.) (holding that the absence of evidence for two factors did not render the evidence of fees insufficient). And in contingency fee cases, in particular, courts do not always require evidence of hours spent on the case in order for a jury to be able to determine a reasonable amount of attorney's fees.[2] *See Brazos Elec. Power Co-op., Inc. v. Weber*,

---

[2] McDonald directs us to *Ford Motor Co. v. Garcia*, a March 2012 Texas Supreme Court case in which the Court reversed an award of guardian ad litem attorney's fees where the evidence showed that the ad litem did not perform all tasks listed on his invoice, the invoice did not set out the amount of time each

8

238 S.W.3d 582, 586-87 (Tex. App.—Dallas 2007, no pet.) (holding that there was sufficient evidence of the Arthur Andersen factors to support shifting contingency fee where there was testimony about the number of months the attorney had spent on the case, the length and nature of the relationship between the attorney and client, the attorney's expertise in the subject-matter of the case and that the contingency fee was a customary fee in this type of case); *Vingcard A.S. v. Merrimac Hospitality Systems, Inc.*, 59 S.W.3d 847, 869-70 (Tex. App.—Fort Worth 2001, pet. denied) (holding that there was sufficient evidence to support shifting contingency fee where there was testimony:   that a contingency arrangement was customary in these type of cases and that the percentage being charged was, in fact, less than other cases of the same type; explaining how the fee would be used to pay costs and co-counsel fees; and explaining the jury how to calculate the percentage).

Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable and fair-minded jury could have found that $66,287.24 was a reasonable fee for English's services.   *See City of Keller*, 168 S.W.3d at 807, 827.   We also conclude that the evidence supporting the jury's finding on English's fees was not so weak as to make the verdict clearly wrong and manifestly unjust.   *See Cain*, 709 S.W.2d at 176.

---

task took, and many of the tasks listed were not compensable under the rule of civil procedure governing the compensation of guardians ad litem.   363 S.W.3d 573, 580-82 (Tex. 2012).   McDonald asserts that *Ford Motor Company v. Garcia* "reaffirmed the principle that the fact finder must determine attorney's fees in light of the work performed in the very case for which the fee is sought."   In another recent case, the Texas Supreme Court weighed in on the proof required for fees awarded based on the lodestar method, holding that "the fee application and record must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 765 (Tex. 2012).   We do not find either of these cases dispositive of this appeal as both involve specific fee arrangements not present in this case—guardian ad litem fees and lodestar method fees—and neither involve contingency fee agreements and the unique standard involved in proving the reasonableness of shifting a contingency fee.

9

## B. Segregation

Next, noting that Fox's "attorneys pursued several claims, including a will contest, an interpleader involving life insurance proceeds, a temporary administration with several contests, motions to enforce the purported settlement agreement filed under the will contest cause of action, and the case at hand," McDonald argues that Fox failed to segregate English's fees between the services for which fees were recoverable and those for which they were unrecoverable. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) ("[W]e reaffirm the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees."). However, the evidence shows that English was only involved with the breach-of-contract suit to enforce the settlement agreement. Baker was Fox's attorney for the remaining claims indentified by McDonald, and McDonald does not challenge Fox's segregation of Baker's fees. The settlement agreement specifically provides that the prevailing party in any dispute over the enforcement of the agreement shall recover attorney's fees, and McDonald does not dispute this. Because all of English's services involved Fox's efforts to enforce the settlement agreement, there was no need to segregate his fees.

## C. Summary

Having determined that the evidence was sufficient to support the reasonableness of the jury's attorney's fee award and that Fox was not required to segregate English's fees, we overrule McDonald's first issue.

### III. Contract Damages

By her second issue, McDonald argues that the damages awarded by the jury

were supported by legally and factually insufficient evidence because the damages were not properly offset by the costs Fox avoided by not conveying her interest in the mother's house, as required by the settlement agreement. The jury was charged as follows on damages:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Donna Fox for her damages, if any, that resulted from [McDonald and John Fox's] failure to comply [with the settlement agreement].
>
> Consider the following elements of damages, if any, and none other.
>
> The difference in value, if any, between the value of the obligations agreed to by the parties and the value of the obligations performed by John E. Fox and Deborah McDonald. The difference in value, if any, shall be determined at the time and place the obligations were performed.

The jury then answered that $199,060.78 was a reasonable amount for damages sustained by Fox. McDonald argues that, under the charge, it was unreasonable for the jury to not reduce the amount it awarded Fox by the value of her one-third interest in the house, which interest she was obligated to convey under the settlement agreement but undisputedly never did. We disagree—the amount of damages awarded by the jury complied with the charge and was supported by the evidence at trial.

Here, the jury specifically found that Fox was entitled, under the settlement agreement, to the proceeds from the mother's life insurance policy, a Wells Fargo bank account, and an ING account. At trial, there was evidence that: the life insurance policy was valued at approximately $185,000; the Wells Fargo account had a balance of approximately $12,000; and the ING account had a balance of approximately $1,600. These figures totaled almost $199,000, very near the amount awarded by the jury.

11

McDonald argues that the jury should have reduced its award by the value of Fox's one-third interest in the mother's home.[3] But the charge, to which McDonald lodged no objections, did not require the jury to make the offset McDonald urges. Rather, under the charge, it was reasonable for the jury to disregard the value of Fox's interest in the house because, in the settlement agreement admitted as evidence at trial, Fox's obligation to deed her interest in the house was conditioned on McDonald and John Fox's execution of releases regarding the life insurance proceeds. In other words, because there was evidence that McDonald and John Fox never executed those releases, it was reasonable for the jury to conclude that Fox's obligation to deed her interest was never triggered and, therefore, was not a cost avoided by Fox that needed to be reflected in the damages awarded. We believe this apparent finding is further supported by the jury's finding that McDonald and John Fox's failure to comply with the settlement agreement was not excused by any breach of the agreement by Fox. Ultimately, juries have considerable latitude in making damages awards within the evidence presented at trial. *See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002) (citation omitted). And we will not disturb the jury's award in this case as it was clearly supported by the evidence and authorized by the charge.

In sum, viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable and fair-minded jury could have found that Fox suffered $199,060.78 in damages as a result of McDonald's failure to comply with the settlement agreement. *See City of Keller*, 168 S.W.3d at 807, 827. We also conclude that the evidence

---

[3] The evidence at trial showed the home to be valued at approximately $234,000; one-third of this amount would have been approximately $78,000.

supporting the jury's finding on Fox's damages was not so weak to make the verdict clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. McDonald's second issue is overruled.

## IV.   Validity of Settlement Agreement

By her fourth issue, McDonald argues that the settlement agreement in this case was unenforceable as a matter of law because: (1) the deletion of Fred Fox as a recipient of the life insurance proceeds materially altered McDonald's initial settlement offer to Fox, was therefore not a valid acceptance, and thus no legally enforceable contract formed; and (2) the ratification of the alteration by McDonald's attorney did not bind McDonald.

> [A] written settlement agreement may be enforced though one party withdraws consent before judgment is rendered on the agreement. *See Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). Where consent is lacking, however, a court may not render an agreed judgment on the settlement agreement, but rather may enforce it only as a written contract. *Id.* at 462. [In such a case], the party seeking enforcement must pursue a separate breach-of-contract claim, which is subject to the normal rules of pleading and proof. *Id.*

*Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996). To prevail in a breach-of-contract suit, a plaintiff must prove: (1) existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 140 (Tex. App.—Corpus Christi 2008, no pet.).

Here, McDonald challenges the existence of a valid and enforceable contract. In order for a contract to be enforceable, there must be an offer, an acceptance in strict compliance with the terms of the offer, a meeting of the minds, consideration, each party's

13

consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding. *ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 291 (Tex. App.—Corpus Christi 2003, pet. denied) (citing *Fed. Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997); *Labor Ready Cent. III, L.P. v. Gonzalez*, 64 S.W.3d 519, 522 (Tex. App.—Corpus Christi 2001, no pet.)). Whether a contract is enforceable is a question of law we review de novo. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008).

McDonald contends that, during the mediation, she tendered an offer to Fox in the form of a type-written draft settlement document.[4] In relevant part, the draft agreement provided that the life insurance policy would be paid "in its entirety to Donna A. Fox and Fred Fox." In the settlement document that eventually became the subject of this suit, Fred Fox's name had been crossed out. There was conflicting testimony at trial concerning the negotiations that led to the deletion of Fred Fox's name. McDonald testified that she never agreed to the deletion of Fred Fox's name as a recipient of the life insurance funds; she testified that she was unaware of the deletion until her lawyer made her aware of the alteration the day after the mediation. Both John Fox's attorney, Vaughn Westheimer, and Fox's attorney, Brenda Baker, testified that Fred Fox's name was eliminated early in the negotiations. Westheimer testified that, although McDonald and John Fox signed their names to the settlement document before any hand-written deletions or other alterations were made, he specifically pointed out the deletion of Fred Fox's name to everyone in the room, including McDonald, before the conclusion of the

---

[4] Fox does not dispute this characterization of the negotiations and it is supported by the record. *See* Tex. R. App. P. 38.1(g).

14

mediation. Westheimer testified that, at the end of the mediation, he was under the impression an agreement had been reached. Finally, the settlement agreement was admitted into evidence. The agreement, which included the deletion, included the signatures of both McDonald and her attorney. Further, the initials of McDonald's attorney appear by the deletion of Fred Fox's name.

Both of McDonald's arguments in this issue center on her contention that she never agreed to the deletion of Fred Fox as a recipient of the life insurance proceeds. First, McDonald argues that the deletion by Fox was not in strict compliance with the terms of her offer and, thus, was not a valid acceptance by Fox. *See ABB Kraftwerke Aktiengesellschaft*, 115 S.W.3d at 291. We are not persuaded by this argument. Assuming that the deletion of Fred Fox constituted a counter-offer by Fox to McDonald's initial offer, there was evidence that this deletion was agreeable to the parties. There was testimony that the deletion of Fred Fox's name was discussed by the parties early in the negotiations and that the deletion was pointed out to all the parties by one of the attorneys before the end of the mediation. We are also mindful of the agreement itself, which included the complained-of deletion and McDonald's signature. Had McDonald disagreed with the hand-written deletion of Fred Fox's name that occurred after she initially signed the document, she could have removed her signature before the end of the mediation. Instead, in light of the fact that McDonald does not contend that the deletion was made surreptitiously or otherwise fraudulently, and because we presume that parties know the contents of contracts they sign, we presume that McDonald agreed to the terms of this document which contains her signature. *See In re Bank of Am., N.A.*, 278 S.W.3d 342, 344-45 (Tex. 2009) (holding that courts presume a party that signs a contract knows

15

its contents, and absent fraud or imposition, a party's failure to read an instrument before signing is not a ground for avoiding it). In short, there was evidence that the parties ultimately had a meeting of the minds and consented to the terms. *See ABB Kraftwerke Aktiengesellschaft*, 115 S.W.3d at 291. In determining that an enforceable agreement existed, the trial court was free to disregard McDonald's self-serving testimony that she would never have agreed to the deletion and credit the foregoing evidence that the parties ultimately reached an agreement, which included the deletion of Fred Fox's name. In light of the conflicting evidence, we will not disturb the trial court's determination in that regard.

Next, McDonald argues that the initials of her attorney by the deletion, alone, did not bind her to the contract. McDonald argues that her attorney, Brad Bunting, had no authority to approve the deletion of Fred Fox's name because McDonald never consented to the deletion. *See Sw. Bell Tel. Co. v. Vidrine*, 610 S.W.2d 803, 805 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) ("It has long been settled that the mere employment of counsel does not clothe the counsel with authority to settle the cause without the specific consent of the client."). Again, we are not persuaded. As discussed above, Bunting's initials were not the only evidence of McDonald's assent that was before the trial court. There was other evidence that all parties, including McDonald, were aware of the deletion before the end of the mediation. This is evidence that McDonald herself agreed to the terms in the settlement agreement as she left her signature on the agreement even after being made aware of the deletion. We believe the foregoing makes Bunting's initials—and whether he had McDonald's specific consent—irrelevant.

We conclude that the trial court did not err in determining, as a matter of law, that

16

the settlement agreement was enforceable.   We overrule McDonald's fourth issue.

## V.  Admission of Mediator's Statement

By her third issue, McDonald argues that the trial court abused its discretion in admitting as evidence the mediator's report to the court, in which the mediator indicated that the case had been settled.  McDonald argues that Fox failed to lay the proper predicate for the mediator's report to be used as expert testimony and that the report was hearsay that did not fall into the public records exception of rule 803.  *See* TEX. R. EVID. 702, 703, 803(8).  McDonald argues she was harmed by the admission of the evidence because Fox relied on the mediator's statement that a settlement had been reached as part of her theory at trial that a contract had formed between the parties.

Assuming without deciding that the trial court erred in admitting the mediator's report, we cannot agree that McDonald was harmed by its admission.  Erroneously admitted evidence warrants reversal only if the error probably resulted in the rendition of an improper judgment.  TEX. R. APP. P. 44.1(a); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).  To determine whether the admission of evidence was harmful, "we must evaluate the entire case from voir dire to closing argument, considering the evidence as a whole, the strength or weakness of the case, and the verdict."  *U-Haul Int'l, Inc. v. Waldrip*, No. 10-0781, 2012 WL 3800220, at *14 (Tex. Aug. 31, 2012) (citing *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883-84 (Tex. 2003)).  "In determining whether the erroneous admission of evidence probably led to an improper judgment, courts look to the role the evidence played in the context of the trial and the efforts made by counsel to emphasize the erroneous evidence, as well as whether contrary evidence existed that the

improperly admitted evidence was calculated to overcome." *Id.* (citations omitted).

Here, the mediator's report was introduced by Fox and admitted by the trial court during the testimony of Brenda Baker, Fox's probate attorney. The exchange relevant to the admission of the report was as follows:

[Counsel for Fox]: Now, we talked about, in the Court's [order referring the parties to mediation], when the the Court ordered the case to be mediated, one of the things the Court also ordered is to — said the mediator shall file a report with this court within 48 hours after the completion of the mediation indicating only whether the case settled in whole or in part, correct?

[Baker]: That's correct.

[Counsel for Fox]: And that's a normal thing in a mediation to have happen, right?

[Baker]: Yes, it is.

[Counsel for Fox]: Now, we'll mark Plaintiff's Exhibit 6 which is in evidence, this is dated January 15[, 2010]. So that's three days after January 12, the letterhead is Michael Elliott, the mediator, and it was to Judge Lisa Gonzales, regarding the estate of Rose Marie, and it says: "The above case on file was subject to mediation conducted by me on Tuesday, January 12. I am pleased to announce that the parties have entered into a settlement of the case and will be submitting the appropriate orders within the next 10 days." And that's signed by Michael Elliott.

[Baker]: Yes, that's correct.

[Counsel for Fox]: And it was carbon copied to all three attorneys, correct?

[Baker]: Yes, it was.

[Counsel for Fox]: So did you also feel at the time that an agreement had been reached?

18

[Baker]: Yes.

The foregoing is the only testimony regarding the mediator's report presented at the three-day trial. The report was next mentioned in closing argument by Fox's counsel:

> After the mediation, the mediator, Mike Elliott says: "I am pleased to announce that the parties have settled the case." So the mediator is saying, hey, Judge, we settled the case. So [John Fox's] attorney Vaughn Westheimer feels they settled so does the mediator who was in there. So we got four people that say the case was settled; the mediator, Vaughn Westheimer, attorney, Brenda Baker, and Donna Fox all say the case settled.

> Remember we were talking about those scales of justice when we started the case? If you want to just talk about the scales of justice, it's four against three. Their attorney, Brad Bunting says it wasn't settled. John Fox says it wasn't settled. Deborah McDonald said not settled. But there are more people saying it settled. And the real interesting thing is one of them is on their side, Vaughn Westheimer. And the other guy is totally impartial, Mike Elliott. So, Brad Bunting, three days later says, oh, I just realized that "and Fred Fox's" name was scratched out. So he sends a letter to Brenda Baker and says, Ms. Baker, I've got something I want Fred Fox to sign. So he says, okay, I've just noticed this. Let me send something for him to sign. Kind of the — the [implication] is, well, if you'll just sign it then everything's fine, we'll go on. So, here's Fred Fox. I put his picture here. He signs a release on January 24th showing that we did what they asked [us] to do. Fred signed it. . . .

Having reviewed the entire record, we do not believe the foregoing probably caused the rendition of an improper verdict. As discussed in our resolution of McDonald's fourth issue, there was other evidence that the parties reached a settlement agreement, including testimony that the deletion of Fred Fox's name had been discussed early in the negotiations and that the deletion was pointed out to all parties before the conclusion of the mediation. McDonald's signature on the document, absent any allegations of fraud or other impropriety, is also strong evidence that an agreement was reached. And even if we were to focus singularly on counsel's closing argument,

19

counsel emphasized the opinion of John Fox's attorney that an agreement had been reached just as forcefully as the mediator's report. Following his mention of the mediator's report, counsel then immediately emphasized further evidence of an agreement between the parties—that McDonald's attorney, Brad Bunting, requested that Fred Fox sign a release, which implied that the terms of the settlement document were agreeable to McDonald.

In other words, it appears that the mediator's report was but a small part of Fox's evidentiary arsenal, which included ample other strong evidence that the parties had reached an agreement. *See U-Haul Int'l, Inc.*, 2012 WL 3800220, at *14. Thus, we cannot conclude that the mediator's report probably caused the rendition of an improper verdict by the jury. *See* TEX. R. APP. P. 44.1(a). McDonald's third issue is overruled.

## VI. Conclusion

We affirm the judgment of the trial court.


NELDA V. RODRIGUEZ
Justice


Delivered and filed the 15th
day of November, 2012.

20