PER CURIAM
This mandamus petition arises out of a discovery dispute. Specifically, the real party in interest suspects that the relator is unable or unwilling to diligently search his computer for responsive documents. On the real party's motion, the trial court ordered the relator to turn over his computer and other electronic devices for forensic examination. We conditionally grant mandamus relief and order the trial court to vacate its order.
I
Relator Marion Shipman partnered with Mark and Jamie Shelton in various real-estate ventures and auto dealerships in the 1990s and 2000s. According to Shipman, their business dealings ceased in 2010. In 2011, a bank sued Shipman and the Sheltons, seeking recovery of $1.3 million in loans made to an auto dealership owned by the Sheltons. As guarantor of the loans, Shipman settled with the bank in 2012, but the bank's case against the Sheltons moved forward. More than two years later, in October 2014, Jamie, the real party in interest here, brought a third-party action against Shipman, alleging fraud as well as breaches of contract and fiduciary duty.
Jamie sought to discover a variety of records concerning Shipman's business dealings with the Sheltons over the years. Shipman responded to two sets of discovery requests, producing responsive documents both times. But Jamie was dissatisfied with Shipman's production and filed a motion to compel.
In July 2015, the trial court ordered Shipman to produce more documents-primarily financial statements and "floor-planning" spreadsheets related to auto dealerships. In a deposition later that month, Shipman testified that he had produced all such documents in his possession. He added, however, that some relevant data was on a computer that "crashed" in 2012, more than two years before Jamie sued him. Shipman testified he was unable to retrieve records from that computer.
But a few days later, Shipman reported that his son had helped him discover files from his old computer in a "backup" folder on his replacement computer. Shipman's attorney reviewed those documents and, on August 3, produced a thumb drive containing responsive documents. In an affidavit, Shipman further attested that other documents the trial court ordered produced had been destroyed years earlier. According to Shipman, "[m]ost of the partnerships and transactions that the judge ruled I had to produce documents for dated from the late 1990s and early 2000s. In 2011, my CPA told me that I only had to keep files for 7 years, and so I cleaned my files of documents that were more than 7 years old, and I burned those files." Both Shipman and his attorney submitted affidavits *565 insisting they had diligently searched Shipman's files, both physical and electronic, and produced all responsive documents-according to them, more than 6,000 pages.
Jamie filed a second motion to compel-the one at issue in this case-arguing that in light of Shipman's deposition testimony and belated "late-night production," it had become "crystal clear" that Shipman had "misled" the trial court at the previous motion-to-compel hearing and "had failed to produce (or even to search for) entire categories of responsive, discoverable information, and that Shipman may have destroyed material evidence in the case." Jamie asked the trial court to compel Shipman to turn over his computer for forensic inspection. Jamie offered testimony from a forensic examiner who said he could determine if more backup files existed and whether files had been deleted. He further testified he could likely recover data from the "crashed" computer, though Shipman maintains that device is no longer in his possession.
The trial court ordered Shipman to produce not only his computer but also all "media" for forensic examination, including "all internal hard drives and external media (including, without limitation, thumb drives, hard drives, CDs, DVDs, zip drives and any other storage medium) in Shipman's possession, custody or control and used by Shipman or his agents at any time during the period January 1, 2000 through the present." The order contains a detailed forensic-examination protocol to protect Shipman's privacy and legal privileges. In short, the forensic examiner would "blindly" generate a list of all file names on the media and provide the list only to Shipman's counsel, who could then make objections before turning anything over to Jamie's counsel. The Austin court of appeals denied mandamus relief in a non-substantive opinion. No. 03-16-00345-CV, 2016 WL 3677883 (Tex. App.-Austin July 8, 2016, orig. proceeding) (mem. op.).
II
Shipman now seeks mandamus relief from this Court, arguing the trial court abused its discretion in three ways. First, the underlying discovery request does not seek specific documents in electronic form, as Rule 196.4 requires. Thus, the trial court lacked discretion to order Shipman to turn over his computer and other media for examination. See TEX. R. CIV. P. 196.4. Second, the bare allegations supporting the motion are insufficient to justify such an invasive search. Shipman argues Jamie presented no evidence that he defaulted on his obligation to search his records, that his production was inadequate, or that a forensic search of his storage devices could recover responsive materials that had not already been produced. And third, the trial court's order is overly broad, covering all of Shipman's computers and electronic media for the past seventeen years, and grants more relief than Jamie requested.
"A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." In reNat'l Lloyds Ins. Co. , 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam). "A writ of mandamus will issue only if the trial court reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law and the relator has no adequate remedy by appeal." In re State Farm Lloyds , 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding) (internal quotation omitted). Appellate courts may not substitute their judgment for the trial court's determination of factual matters committed to the trial court's discretion. See ids="12382664" index="3" url="https://cite.case.law/sw3d/520/595/#p604">id. "But with regard to questions of law and mixed questions of law and fact, a *566 trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled." Id. (internal quotations omitted).
"Intrusive discovery measures-such as ordering direct access to an opponent's electronic storage device-require, at a minimum, that the benefits of the discovery measure outweigh the burden imposed upon the discovered party." In re Weekley Homes, L.P. , 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding) (citing TEX. R. CIV. P. 196.4, 192.4 ). "Providing access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be." Id. at 317.
A
Shipman initially argues that Jamie failed to satisfy the Rule 196.4 requirement to "specifically request production of electronic or magnetic data and specify the form in which the requesting party wants it produced." He points out that she never sought access to his computer hard drive or other media and "did not request documents that could be obtained from only those sources." The only reference to electronic data in Jamie's discovery requests, Shipman argues, is "generic language" in her second request for production that modified the definition of "document" to include "data and information that exists in electronic or magnetic form." If a "global" definition were satisfactory, he argues, the rule would require no specificity at all.
Jamie acknowledges that her first request for production did not include a request for electronically stored information, but she argues the "generic" reference in her second request is sufficient. And, even if it isn't, she relies on Weekley in arguing that her second motion to compel clarified the scope of her request to include electronic data on Shipman's computer.
In Weekley , we concluded the request at issue was not specific enough to cover the deleted emails the requesting party sought. See 295 S.W.3d at 314. But we also held the requesting party's "failure to follow the rule" did not prejudice the producing party. Id. at 314-15. In that case, the requesting party was skeptical that the emails it received reflected the volume in the producing party's possession. See ids="7299637" index="9" url="https://cite.case.law/sw3d/295/309/#p322">id. at 312. The requesting party elicited testimony at a motion-to-compel hearing that the producing party's computer system "forces employees to clear out their inboxes on a regular basis, so that deleted emails will only be saved if an employee backs them up on the employee's own personal hard drive somehow." Id. at 312 (cleaned up). So the requesting party sought direct access to that computer system in hopes of recovering deleted emails. Id. at 313.
We concluded the underlying discovery requests were not specific enough to include deleted emails but that it "became abundantly clear in the course of discovery and before the hearing on the motion to compel" that deleted emails were sought. Id. at 314. "The purpose of Rule 196.4's specificity requirement," we noted in Weekley , "is to ensure that requests for electronic information are clearly understood and disputes avoided." Id. Because the scope of discovery sought "was understood before trial court intervention, [the producing party] was not prejudiced by [the requesting party's] failure to follow the rule." Id. at 314-15.
Jamie's discovery requests do not explicitly seek direct access to Shipman's computer. Rather, Jamie seeks access to Shipman's computer through a motion to compel as a remedy for perceived inadequate production, not as a discovery request *567 in itself. The function of Rule 196.4's specificity requirement is to ensure electronic-information requests are "clearly understood and disputes avoided." Id. at 314. Jamie's request to directly access Shipman's computer is, in her view, a response to Shipman's failure to comply with her "clearly understood" requests for electronically stored information. She properly sought that remedy through her second motion to compel; she did not need to separately lodge a Rule 196.4-specific discovery request for direct access to Shipman's computer.
Furthermore, we are not persuaded that Shipman can claim prejudice by any failure on Jamie's part to specifically request electronically stored information. Like the deleted emails sought in Weekley , it became "abundantly clear" throughout the course of litigation and before trial-court intervention that Jamie sought financial records she believed were relevant to this case, whether they exist in a physical file cabinet or on an electronic device. See ids="7299637" index="16" url="https://cite.case.law/sw3d/295/309/#p322">id. at 315. Regardless of the specificity of Jamie's initial requests, she argued in her second motion to compel that "Shipman should be required to produce all paper and electronic records he can locate using diligent efforts, and to make his computer[s] available for forensic examination." If Jamie's discovery requests did not technically meet Rule 196.4's specificity requirement, Shipman cannot argue Jamie's intent was not "clearly understood."
Insisting her request was sufficiently specific, Jamie argues we should decline to consider Shipman's arguments because he failed to object to her request as required under Rule 196.4. See TEX. R. CIV. P. 194.6 ("If the responding party cannot-through reasonable efforts-retrieve the data or information requested or produce it in the form requested, the responding party must state an objection complying with these rules."). She points us to Shipman's response to her second requests for production, in which Shipman objects to some requests and agrees to others, but never takes the position that the information requested is reasonably unavailable to him under Rule 196.4. Shipman responds simply that because no specific Rule 196.4 request was made, no Rule 196.4 objection was required.
Neither Jamie's argument nor Shipman's response correctly contemplates the relationship of Rule 196.4 to this case. Rule 196.4 requires the producing party to produce "data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business." Shipman's position is that all responsive documents in his possession have been produced. He does not claim to hold back anything on the basis that it is not reasonably available to him in the course of his business. Cf. State Farm , 520 S.W.3d at 600-01 (considering a producing party's argument that documents admittedly in its possession in the requested "native" format were not reasonably available in the ordinary course of business). In this case, Shipman could not lodge a Rule 196.4 objection without contradicting his position that he had produced all responsive documents in his possession.
B
We therefore proceed to Shipman's argument that the trial court abused its discretion in ordering Shipman to surrender his computer and all other electronic media from the past seventeen years for forensic examination. As a threshold to granting access to electronic devices, "the requesting party must show that the responding party has somehow defaulted in its obligation to search its records and produce the requested data." Weekley , 295 S.W.3d at 317. But we do not rely on *568 "mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties." Id. at 318.
The crux of Jamie's argument is that Shipman's post-deposition production, along with his equivocal deposition testimony concerning the existence of particular documents, indicates he is incapable of or unwilling to search his computer for responsive documents. She insists the evidence shows Shipman kept detailed business records on his computer-both the one that "crashed" in 2012 and his current computer-but that Shipman has proved himself "lacking the expertise" to "thoroughly and diligently search his electronic storage media." So although Shipman testified in his affidavit that he has produced all responsive documents, Jamie argues that her only assurance is that Shipman testified at his deposition that "[I] looked at my computer to see, and I don't have them on there."
This assurance, Jamie maintains, rings hollow against additional deposition testimony in which Shipman was unsure about the existence of particular documents Jamie seeks. For example, when asked about particular records concerning floor-planning payments, loans made to Mark Shelton, and a 2008 financial statement potentially provided to the bank that earlier sued Shipman and the Sheltons, Shipman provided equivocal answers such as "I'll have to look and see," "I don't know if our records go back that far," and "I don't know if I've still got it." Based on these responses, Jamie argues Shipman's position that he thoroughly searched his computer and produced all responsive documents is not credible. Jamie also insists Shipman admitted in his deposition that he deleted some computer files, though Shipman maintains those statements referred to documents stored on his old, "crashed" computer, and not his current computer. In his affidavit, Shipman swears he has not deleted any files from his new computer.
Shipman acknowledges that the backup files discovered after his deposition were produced late, but he argues that late production is not tantamount to default under Weekley . Otherwise, an opposing party would be entitled to search all of the producing party's computers and other electronic storage media every time the producing party supplements an initial production. The evidence shows that after his July 29 deposition, Shipman enlisted his son's assistance in searching his computer files and discovered the "backup" folder. Shipman promptly turned these files over to his attorney, who in turn quickly reviewed them and produced responsive documents to Jamie on August 3.
Of course, late production of the backup files is inconsistent with Shipman's deposition testimony that no such files existed. But Shipman's later determination that they did exist, paired with his prompt production of responsive files from that backup, indicates an effort to comply with discovery rather than a default. And the discovery process is best served by rules that encourage parties to produce documents belatedly discovered in good faith. They should not face the perverse incentive to conceal such information lest they be forced to hand over the underlying electronic devices for forensic examination.
Shipman's belated discovery of the "backup" folder is evidence bearing on his ability to operate a computer and to search for and retrieve responsive documents. But it gives rise only to "mere skepticism" that responsive documents remain on Shipman's computer, see Weekley , 295 S.W.3d at 318, and it is insufficient evidence to support a finding that he defaulted on his discovery obligation. Indeed, Jamie's insistence that Shipman kept detailed records on his computer, including "electronic *569 check registers" and "financial statements," suggests that Shipman is competent at some level to operate a computer and create and negotiate computer files. Though he admittedly failed to discover the "backup" folder in his initial search, he did eventually discover and produce it. Jamie offers no evidence that he is incapable of searching the computer files he actively maintained on the device or that an exhaustive search for backup files has not now been conducted, either by Shipman or his son.
Nor does Shipman's equivocation about the existence of discrete documents at his deposition transform general skepticism into discovery default. Shipman was asked about discrete, individual documents linked to 2008 and 2009-more than five years before the deposition-and stated he was unsure if they existed. This is no evidence that he cannot reliably produce responsive documents from his computer. Shipman's affidavit testimony that he has produced all responsive documents is his ultimate answer on what documents are in his possession. His inability to remember off the cuff what documents he possesses, even when combined with any skepticism surrounding late production of the "backup" folder, creates only more skepticism, not evidence of default under Weekley .
We do not suggest that a requesting party can never establish a discovery-obligation default under Weekley by offering evidence of a producing party's technical ineptitude. Nor do we discount trial-court discretion in determining when that line is crossed. But the burden imposed by Weekley is high-forensic examination of electronic devices is "particularly intrusive and should be generally discouraged." 295 S.W.3d at 317. And notably absent from the record here is any examination of what exactly Shipman's or his son's technical capabilities actually are. Neither testified at the motion-to-compel hearing. Instead, Jamie's counsel merely recounted Shipman's equivocal deposition answers, explained the belated production from the backup folder, and then stated: "Our question is: What else is there?"
Counsel's question suggests exactly the "mere skepticism" Weekley prohibits as a basis for forensic examination. Id. at 318. Jamie's burden is to show that Shipman "somehow defaulted" in his discovery obligation and that his production "has been inadequate and that a search [of his computer] could recover ... relevant materials." Id. But Jamie has only established that some of Shipman's production was late and some of his deposition answers were equivocal. There is no evidence-just suspicion-that more unrecovered data exists on Shipman's computer outside the "backup" folder. Shipman was neither pressed at his deposition nor examined at the motion-to-compel hearing concerning his computer skills or the specific steps he took to search his computer. There is no evidence that, having discovered one "backup" folder, Shipman is incapable of searching for others either by himself or through his son. And there is no evidence at all concerning the abilities of Shipman's son, who discovered the "backup" folder. If Jamie's complaint is that Shipman lacks the ability to thoroughly search his computer such that someone else should do it for him, the evidence shows he did just that. Yet Jamie made no attempt to ascertain Shipman's son's abilities, what processes he undertook, and whether his search was adequate.
On the evidence presented, however, the trial court ordered Shipman to surrender not just the computer at issue, but also all electronic "media," whether business or personal, and regardless of whether they are related to the issues in the lawsuit, for the past seventeen years.
*570 Shipman argues the order's breadth far exceeds the relief Jamie sought. Indeed, the parties argue only about access to Shipman's current personal computer. We agree that even if some relief were warranted, the trial court's order was overly broad. The trial court appeared to grant greater relief than was sought in Jamie's motion to compel, and there is no apparent connection between the vast majority of the devices and media the order covers and the documents Jamie seeks, or justification for its nearly twenty-year reach. See State Farm , 520 S.W.3d at 595 ("[A]ll discovery is subject to the proportionality overlay embedded in our discovery rules and inherent in the reasonableness standard to which our electronic-discovery rule is tethered.").
* * *
Jamie may ultimately be entitled to some relief, but, on the evidence presented, the trial court abused its discretion when it ordered forensic examination of all of Shipman's electronic devices. The trial court ordered Shipman to produce for forensic examination all his electronically stored files of every kind, whether business or personal, and regardless of whether they are related to the issues in the lawsuit, for seventeen years. Jamie's skepticism about Shipman's production of the relevant records does not amount to a default in Shipman's discovery obligation, nor is it enough to justify such an extraordinarily intrusive order. As such, the trial court abused its discretion and Shipman is without an adequate remedy on appeal. See Weekley , 295 S.W.3d at 322.[1] We conditionally grant the writ of mandamus and order the trial court to vacate its order. We are confident the trial court will comply, and our writ will issue only if it does not.

Jamie separately argues spoliation as a basis for finding that Shipman defaulted on his discovery obligations. She argues that litigation between the bank and Shipman and the Sheltons was ongoing in 2012 when Shipman's computer "crashed," but Shipman made no effort to retrieve or retain any of the data stored on that computer, a knowing and intentional breach of his duty to preserve evidence. Jamie argues Weekley supports her position that "direct access to electronic media may be allowed when a responding party breached his duty to preserve information in connection with pending litigation."
Notably, Jamie had not yet sued Shipman when his computer "crashed" and would not do so until more than two years later. In any event, we cannot, on this record, conclude Shipman committed spoliation with regard to his "crashed" computer, nor is the issue directly presented to us. Shipman sought a spoliation instruction in her second motion to compel, seeking "an appropriate 'spoliation' instruction at the time of trial." But the trial court apparently has not ruled on that portion of Jamie's motion, and in any event, the record before us is insufficient for us to consider whether Shipman spoliated any evidence.