# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00434-CV

Wichita County, Texas, Appellant

v.

Environmental Engineering & Geotechnics, Inc., Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-18-001884, HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

This appeal concerns a nonparty's recovery of "reasonable costs of production" as reimbursement for document production. *See generally* Tex. R. Civ. P. 205.3 (providing for production of documents from nonparties); *see also id.* R. 205.3(f) ("A party requiring production of documents by a nonparty must reimburse the nonparty's reasonable costs of production."). In the underlying lawsuit, Wichita County sued Southwest Convenience Stores, LLC (SCS) for alleged contamination of groundwater that occurred from 1996 through 2016 from SCS's storage tanks located at a site in Wichita County. SCS had employed Environmental Engineering & Geotechnics, Inc. (EEG), a nonparty to the underlying lawsuit, as its environmental consulting firm from 1997 through 2016. On April 25, 2018, the County served a subpoena requesting production of EEG's documents related to the site. EEG produced over 10,000 scanned pages of documents and requested reimbursement. After a hearing, the trial court awarded $11,283.89 as "reasonable costs."

In two issues, the County argues first that the trial court erroneously refused its request to conduct discovery as to the reasonableness of EEG's costs and second that insufficient evidence supports the amount of the award. The opinion of the Court holds: (1) the County did not preserve error to conduct discovery, (2) sufficient evidence supports the reasonableness of $3,711.39 in costs for scanning documents, (3) EEG was not entitled to recover $92.50 in costs for a half hour of time billed before the subpoena's date of service, and (4) factually insufficient evidence supported the reasonableness of the $7,480 billed in costs for the work of three EEG executives. The Court therefore affirms as to the first two holdings, reverses and renders as to the third, and reverses and remands as to the fourth. I join in the first two holdings. I respectfully dissent, however, from the latter two holdings for two fundamental reasons.

First, it is my opinion that the Court should not grant a remand remedy when the County did not request it in its briefing and expressly disavowed the remedy at oral argument. *See* Tex. R. App. P. 38.1(j) ("The brief must contain a short conclusion that clearly states the nature of the relief sought."); *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 392 (Tex. 2011) ("Generally, a party is not entitled to relief it does not request." (citing *State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008))). When asked at oral argument, the County's counsel stated that "[t]hose specifics are challenges to the legal sufficiency, there is just no evidence about why they should get costs from April 20th through 25th or past May 7th," and "if they have not presented sufficient evidence, legally sufficient evidence to support their award, then it's a render"; thus, counsel asserted, on "that point of error, it's all or nothing." Accordingly, I would not fashion a remand remedy that the County did not request.

Second, as a matter of first impression, I disagree with the Court's opinion as to the standard of review. I would conclude that an abuse of discretion standard of review applies to the trial court's determination of what constitutes a "reasonable amount" for costs of production, even when reimbursement is mandatory under rule 205.3(f). *See* Tex. R. Civ. P. 205.3(f). EEG's entitlement to reimbursement is not under review—it is undisputed. Thus, "[a]lthough the award of reasonable attorney's fees and costs of court is mandated by statute"—or, as here, the award of reasonable costs of production is mandated by rule—"the trial court still has discretion to determine the amount in light of the evidence presented." *Bain v. Capital Senior Living Corp.*, No. 05-14-00255-CV, 2015 WL 3958714, at *4 n.3 (Tex. App.—Dallas June 30, 2015, pet. denied) (mem. op.).

Additionally, two analogous contexts where reimbursement is mandatory support applying an abuse of discretion standard of review here. First, in the context of an award of reasonable attorney's fees required under section 27.009 of the Texas Civil Practice and Remedies Code, the Texas Supreme Court has explained that a "reasonable" attorney's fee award is "'one that is not excessive or extreme, but rather moderate or fair'" and "[t]hat determination rests within the court's sound discretion." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010)); *see Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220, 232 (Tex. App.—Austin 2018, no pet.) (holding that determination of "reasonable attorney's fees" "rests within the trial court's discretion" and "declin[ing] to instruct the trial court to award the amount of attorney's fees and costs Hawxhurst requested and remand[ing] to the trial court to determine within its discretion the amount of the reasonable attorney's fees . . .

3

that must be awarded under section 27.009"). Second, an abuse of discretion standard of review also governs the trial court's determination of reasonable attorney's fees for an attorney ad litem that are mandated under rule 244. *See* Tex. R. Civ. P. 244 ("The court shall allow such attorney [ad litem] a reasonable fee for his services, to be taxed as part of the costs."); *see also Atlantic Shippers of Tex., Inc. v. Jefferson County*, 363 S.W.3d 276, 286 (Tex. App.—Beaumont 2012, no pet.) ("In reviewing the fee awarded to the attorney ad litem, the standard of review requires that we allow the trial court to exercise discretion in awarding fees, and a reviewing court will not overturn a fee award absent evidence showing a clear abuse of discretion."); *Garza v. Slaughter*, 331 S.W.3d 43, 45 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("The amount of compensation awarded to an attorney ad litem lies within the sound discretion of the trial court, and a reviewing court will not overturn a fee award absent evidence showing a clear abuse of discretion."). The principle that the determination of the amount of reasonable attorney's fees is in the trial court's discretion also has been repeatedly reaffirmed by this Court and our sister courts. *See, e.g.*, *Ruder v. Jordan*, No. 05-16-00742-CV, 2018 WL 672091, at *3 (Tex. App.—Dallas Feb. 2, 2018, no pet.) (mem. op.) ("Fixing a reasonable attorney's fee is a matter within the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion."); *Highland Pines Nursing & Rehab. v. Wiley*, 496 S.W.3d 804, 812 (Tex. App.—Texarkana 2016, no pet.) (noting that "trial court has discretion to determine the amount of the award" of reasonable attorney fees and court costs); *Kleas v. BMC W. Corp.*, No. 03-05-00190-CV, 2008 WL 5264883, at *3 (Tex. App.—Austin Dec. 19, 2008, pet. denied) (mem. op.) ("The amount of a fee award rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear

4

abuse of discretion."); *Cumberland Cas. & Sur. Co. v. Nkwazi, L.L.C.*, No. 03-02-00270-CV, 2003 WL 21354608, at *5 (Tex. App.—Austin June 12, 2003, no pet.) (mem. op.) ("The amount of attorney's fees to be awarded is a question of fact and must be supported by credible evidence; this amount rests in the sound discretion of the trial court and its findings will not be disturbed, absent an abuse of discretion.").

From these two analogous contexts and the authorities applying an abuse of discretion standard of review to the determination of the amount of a reasonable attorney's fee award, I would conclude that a trial court's determination of the amount for reasonable costs of production under rule 205.3(f) should have the same abuse of discretion standard of review. Similar to attorney's fee awards, the trial court's discretion lies in the determination of what constitutes a reasonable amount, *see Sullivan*, 488 S.W.3d at 299, regardless of whether the party's entitlement is mandated or left to the discretion of the trial court. Additionally, "because the issue of attorney's fees was submitted to the trial court," in contrast to a jury, the trial court could rely on, among other things, "the common knowledge of the participants as . . . judges" in exercising its discretion to determine the reasonableness of the fees. *See Truck Ins. Exch. v. Mid-Continent Cas. Co.*, 320 S.W.3d 613, 623 (Tex. App.—Austin 2010, no pet.) (citing *In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.)); *see also Bocquet v. Herring*, 972 S.W.2d 19, 22 (Tex. 1998) (Baker, J., dissenting) ("Trial judges, as well as appellate judges, can draw on their common knowledge and experience as lawyers and as judges in considering the testimony, the record, and the amount in controversy in determining attorneys' fees."); *Smith v. Texas Co.*, 53 S.W.2d 774, 779 (Tex. Comm'n App. 1932, holding approved) ("It is true it has been held that a trial judge may determine an issue of fact as to what

5

constitutes a reasonable attorney fee for services rendered in a trial before him, from his own knowledge of the nature and value of the services for which compensation is claimed."). I would conclude the same principle applies to costs of document production, a ubiquitous component of litigation, under rule 205.3(f).[1] Here, the trial court exercised that discretion to determine that $11,283.89 constituted "reasonable costs of production" under rule 205.3(f), and I would conclude that the trial court did not abuse its discretion in so doing.

"A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles." *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007) (orig. proceeding) (quoting *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)). When the appropriate standard of review is abuse of discretion, legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion, but they are not

---

[1] As its lead analogical authority for applying a sufficiency standard of review, rather than an abuse of discretion standard to a trial court's determination of reasonable costs of production, the Court relies on *CS Custom Homes, LLC v. Stafford*, No. 03-13-00315-CV, 2015 WL 5684080 (Tex. App.—Austin Sept. 23, 2015, no pet.) (mem. op.). *See ante* at ___. But *CS Custom Homes* involved markedly different circumstances than here. The billed costs in *CS Custom Homes* concerned home repair services requiring expert testimony, not a litigation focused task like document production with which a trial court would be familiar. 2015 WL 5684080, at *4 ("[C]onsidering that the services and charges in question here are those of a structural engineer, a profession requiring specialized, technical knowledge, the aid of expert testimony would be necessary to enable the lay jury to draw reasonable inferences regarding the reasonableness of the services provided, not to mention their necessity."). Accordingly, a trial court would not have the relevant "common knowledge" to exercise its discretion in determining the reasonable fees necessary to perform home repairs. *See Truck Ins. Exch. v. Mid-Continent Cas. Co.*, 320 S.W.3d 613, 623 (Tex. App.—Austin 2010, no pet.) (citing *In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.)). Moreover, *CS Custom Homes* did not even involve a trial court's determination, but rather a jury finding. 2015 WL 5684080, at *4. As already noted above, although a trial judge has "common knowledge" of costs related to litigation focused tasks—and I would conclude this includes costs for document production—a lay jury would not. *See Truck Ins. Exch.*, 320 S.W.3d at 623.

independent grounds of error. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (holding whether there was no evidence to support turnover award would be relevant consideration in determining if trial court abused its discretion, but "no evidence" ground is not proper standard for reversal); *Ruder*, 2018 WL 672091, at *3; *Iliff v. Iliff*, 339 S.W.3d 126, 134 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011); *Spector Gadon & Rosen, P.C. v. Southwest Sec., Inc.*, 372 S.W.3d 244, 251 (Tex. App.—Dallas 2012, no pet.) (applying standard to "the fixing of a reasonable attorney's fee"); *Lesikar v. Moon*, 237 S.W.3d 361, 375 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied); *see also IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997) (Baker, J., dissenting) ("Under an abuse of discretion standard of review, legal and factual sufficiency claims are not independent, reversible grounds of error, but rather merely factors to consider in assessing whether the trial court abused its discretion."); *Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 935–37 (Tex. App.—Austin 1987, no writ) (describing abuse of discretion standard and noting one factor to determine whether trial court abused its discretion is whether appellate record reveals sufficient facts upon which trial court could act rationally in exercising its discretion).

"Once it has been determined that the appropriate standard is abuse of discretion, an appellate court engages in a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Zeifman*, 212 S.W.3d at 588; *see In re Estate of Vrana*, 335 S.W.3d 322, 329 (Tex. App.—San Antonio 2010, pet. denied); *Travelers Indem. Co. of Conn. v. Espinosa*,

7

No. 01-05-00836-CV, 2007 WL 1559936, at *2 (Tex. App.—Houston [1st Dist.] May 31, 2007, no pet.) (mem. op.); *Gonzalez v. Tippit*, 167 S.W.3d 536, 544 (Tex. App.—Austin 2005, no pet.). In this hybrid review, the sufficiency review comes into play with regard to the first question; but the reviewing court must also proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision—that is, that the court's decision was neither arbitrary nor unreasonable. *Vrana*, 335 S.W.3d at 329; *Zeifman*, 212 S.W.3d at 588; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (describing sufficiency standard of review).

## DISCUSSION

**The Evidence**

I begin by reviewing the evidence to determine "if the trial court had sufficient information on which to exercise its discretion." *Zeifman*, 212 S.W.3d at 588. At the hearing, EEG's chief operating officer Mark Owens introduced into evidence the invoice that was submitted to the County. The invoice listed the following relevant information:

- the three EEG employees that worked on the document production: Owens, EEG's executive vice president Bruce Britten, and EEG's president and chief executive officer Kimberly Millette;

- the quantity of hours worked: 22.5, 11, and 5, respectively;

- the billing rate: $185, $185, and $275, respectively;

- the same billing block time period for each employee: 4/20/18 - 5/23/18; and

- the total amount billed for each employee: $4,162.50; $2,035; and $1,375, respectively.

8

The sum total of the amounts billed for the EEG employees equals $7,572.50. Owens's testimony was the only testimonial evidence presented; the County did not submit any controverting evidence. Owens testified as to the time billed, the work required and performed, and the rate billed.

As to the time billed, Owens testified that the invoice time of "4/20/18 - 5/23/18" used for all three employees was "a block of time we used from when I started to when I stopped working," "[s]o that was kind of the block we used for everybody," and that for "a project like this" they would not enter daily time records. He testified that the 22.5 hours listed on the invoice as his billed time are "the actual hours that [he] put in on -- searching for records requested by the subpoena," although the total time listed "may be a little low." In response to the question of whether he could verify to the trial court that "[Britten] had at least 11 hours of his time in this" and "[Millette] had at least five hours of her time in this," Owens said, "Yes."

Owens also testified that although he was served with the subpoena on April 25, 2018, he began work on April 20, 2018. He received a call from SCS's parent company regarding whether he had any "information on a particular site" where EEG had been involved from 1997 until 2016. Owens testified that he "initiated some initial looking into the files at that point" because he was unsure whether he had the information because it "was two years old" and that he spent "[p]robably half an hour" of time "from April 20th to April 25th." He testified that Britten did not bill time until "[p]robably the 25th" and that Millete did not start billing time on April 20th. Additionally, Owens also testified that "not a lot" of time was incurred by him, Britten, or Millette after dropping the boxes of documents off at Office Depot to get copied on May 7, 2018—only that "we'd go through them when they came back."

9

Regarding the work required, Owens testified that the subpoena "looked pretty daunting to us, as far as trying to get all that information, knowing that the site was 20 years ago" and that many documents "predated all our -- most of our electronic communication that we had at that time." He testified that "it took a lot of digging, a lot of looking, a lot of file-pulling, a lot of going in places where nobody would think to look," "whether it was storage units or attic storage, things like that." The places they had to look included "two storage operations and a large attic space" and "other interoffice spaces." He also testified that there were several hundred boxes in those locations that were partially labeled, with no indexes, and that it "was a pretty exhaustive search." Ultimately, EEG scanned over 10,000 pages of documents for production.

Owens also addressed why the EEG executive level employees had to perform the work. First, Owens testified that he was "the only one in the company that expands the whole length of time that this was a project for the company," "Britten managed this project from 2011 to closure" but was involved "[f]rom 2007 on," and Millette was in charge of "all the overall accounting functions and invoicing" with "a lot" of invoicing "done with the State of Texas during the fund process." Second, Owens testified that they "kind of split up the duties": he focused on "stuff that predated" Britten, Britten "predominantly did the stuff he was in charge of from 2007 until the closure," and Millette "was in charge of getting the invoices" and "searched for all the accounting records that would be pertinent to this project."

Finally, as to the billing rates, Owens testified that his $185 rate is "a reduced rate from my principal rate" of $275 an hour and that Britten's professional rate is the same as his and was not billed as a principal either. As to Millette's billing rate, he testified that as president and

CEO her rate was $275 an hour and that "[w]hen she bills, though, she's the lead of the company, the face of the company" even though "a lot of her work is administration."

**The Trial Court's Determination**

With this evidence in mind and viewing it "in the light most favorable to the judgment," *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014), I turn to the first inquiry of whether "the trial court had sufficient information on which to exercise its discretion," *Zeifman*, 212 S.W.3d at 588. The trial court had before it uncontroverted evidence as to the total time billed by each EEG employee, at what rate, and during what time period. The trial court also heard evidence as to the tasks done by the billing employees, where the employees looked for documents, the difficulties associated with producing the documents that covered almost a 20 year time period, and why the billing rates were justified. On the record before us, I would conclude that the trial court had sufficient information to determine the reasonableness of the costs of production.

Although not framed in this manner, the Court's opinion appears to focus on the second prong of the inquiry, disagreeing with the trial court's "application of discretion," not necessarily with the information available. *See Zeifman*, 212 S.W.3d at 588. For example, the opinion declares that "the starting point for determining EEG's 'reasonable costs of production' in response to the County's subpoena under Rule 205.3 is no earlier than April 25, 2018, the undisputed date of service of the subpoena," and that "a reasonable factfinder could not disregard that there was no evidence showing that EEG incurred any costs before April 25, 2018, due to the County 'requiring production of documents' from EEG by subpoena." *Ante* at ___. This appears to be not an evidentiary argument that the costs are unreasonable, but a legal argument that costs incurred prior

11

to the subpoena are not "costs of production" and therefore no evidence can support reasonable costs of production incurred prior to the subpoena.

Rule 205.3(f) states that "[a] party requiring production of documents by a nonparty must reimburse the nonparty's reasonable costs of production." Tex. R. Civ. P. 205.3(f). The clause "requiring production of documents" is modifying the party that is required to reimburse the nonparty, not imposing a requirement on what constitutes "reasonable costs of production." Rule 205.3(f) does not require that "costs of production" must be costs incurred only after a subpoena was served; rather, it requires only that they be "reasonable costs of production." *See id.* The language of rule 205.3(f) provides for only two inquiries in determining the amount to be reimbursed: whether the nonparty's costs are costs of production and whether the costs are reasonable.

Here, for example, the subpoena requested EEG's "entire files, all records . . . [c]oncerning the Site." Owens testified that he started his "initial looking into the files" on April 20th in response to a phone call from SCS's parent company "regarding if [he] had any information on a particular site." He also testified that the 22.5 hours listed on the invoice for his billed time was for "actual hours" "searching for records requested by the subpoena." Spending half an hour looking into the files to determine whether EEG had information on the site at issue reasonably could be a "cost[] of production" responsive to a request for "all records . . . [c]oncerning the Site" and would therefore constitute "searching for records requested by the subpoena," regardless of whether or not the initiating event that triggered Owens's action was the actual subpoena. What is significant is not whether the subpoena motivated EEG to incur costs of production, but whether EEG's costs are objectively attributable to its production of documents and

12

whether those costs are reasonable. I therefore disagree with the Court's opinion in this regard and would conclude that the trial court did not abuse its discretion by impliedly concluding that the half an hour incurred prior to April 25, 2018, for an "initial looking into the files" of the site at issue was a "reasonable cost[] of production."[2]

Additionally, the Court concludes that the billing time from May 7 to May 23 was "improper[]" because "[n]othing in the record reflects that Owens was 'searching' for records requested by the County after May 7, 2018, at 11:20 a.m., when his wife retrieved the last set of responsive documents from Office Depot for copying and scanning and EEG paid the 'final bill.'" *Ante* at ___. But Owens testified that he, Britten, and Millette incurred "not a lot" of time after May 7 and that "[w]e already dropped the boxes off at Office Depot, so we'd go through them when they came back." He also testified that he is "going to be the one that has to say that we found all our documents and presented them all." Thus, it is a reasonable inference that the "not a lot" of time spent after May 7 going through boxes would be for the purpose of confirming that all the records that were to be produced were included in the boxes. *See City of Keller*, 168 S.W.3d at 822 (noting that reviewing court "must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it").

---

[2] I do not imply here that the trial court would have abused its discretion had it concluded that the half hour incurred prior to April 25, 2018, did not constitute reasonable costs of production. But without substituting my judgment for the trial court's, I cannot conclude that the trial court abused its discretion in determining that this half hour incurred constituted a reasonable cost of production. *See In re Shipman*, 540 S.W.3d 562, 565 (Tex. 2018) (orig. proceeding) ("Appellate courts may not substitute their judgment for the trial court's determination of factual matters committed to the trial court's discretion.")

In its role as the factfinder, the trial court had discretion to credit Owens's uncontroverted testimony, and a reviewing court should not usurp that role and substitute its own opinion to the contrary. *See In re Shipman*, 540 S.W.3d 562, 565 (Tex. 2018) (orig. proceeding) ("Appellate courts may not substitute their judgment for the trial court's determination of factual matters committed to the trial court's discretion."); *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009) ("The reasonableness of attorney's fees is ordinarily left to the factfinder, and a reviewing court may not substitute its judgment for the [factfinder]."); *City of Keller*, 168 S.W.3d at 822. I would conclude that the trial court did not err in applying its discretion to credit Owens's testimony and determine that the costs of production were reasonable—its decision was neither arbitrary nor unreasonable.[3] Having concluded that the trial court satisfied both prongs of the hybrid abuse of discretion standard of review, I would overrule the County's second issue.

**CONCLUSION**

For these reasons, I join the Court's opinion as to affirming the trial court's order in part, but respectfully dissent as to reversing in part and would instead affirm in full.

---

[3] Although block billing may not have been the best practice for EEG, I cannot conclude that the trial court abused its discretion in determining the reasonable amount of costs of production based on the block billing and Owens's testimony at the hearing. The nonparty EEG did not perform multiple and varying tasks typical of parties in general litigation that would require itemization of the tasks performed for meaningful evaluation, but instead performed the single limited task of document production responsive to a subpoena and identified the amount of hours required for each employee to perform that task during the relevant time period. Additionally, Owens testified at the hearing as to that limited task, further specifying what was involved in the document production and what each EEG employee did.

_____
Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Filed:   May 31, 2019