

# NUMBER 13-24-00053-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE TEXAS DOW EMPLOYEES CREDIT UNION

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Tijerina[1]**

By petition for writ of mandamus, Texas Dow Employees Credit Union (TDECU) contends that the trial court[2] abused its discretion by denying TDECU's motion for protection and compelling the disclosure of non-party financial information under the Uniform Commercial Code (UCC), adopted in the Texas Business and Commerce Code,

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number 23-H-0320 in the 23rd District Court of Matagorda County, Texas, and the respondent is the Honorable Ben Hardin. *See id.* R. 52.2.

without following the procedures required by the Texas Finance Code. *See* TEX. BUS. & COM. CODE ANN. § 9.210 (allowing a debtor to request an accounting, list of collateral, or statement of account from a secured party); TEX. FIN. CODE ANN. § 59.006 (governing the discovery of customer records from a financial institution). We conditionally grant the petition for writ of mandamus.

## I.   BACKGROUND

In its original petition, TDECU filed suit against "John Doe" for conversion and declaratory judgment. TDECU asserted that it holds a lien on a 2004 CARR,[3] VIN 16F62B5R341DI 1724 (the "Vehicle") which was sold to Randolph Alexander. According to the petition, the Texas Department of Motor Vehicles had advised TDECU that an applicant had applied for bonded title regarding the Vehicle. According to TDECU, the applicant for title, Doe, "is unknown at this time," but TDECU had requested additional information regarding Doe's identity. TDECU asserted that the "application for bonded title is wrongful and is inconsistent with TDECU's rights as lienholder and its superior interest in the Vehicle." TDECU asserted causes of action for conversion and declaratory judgment. In terms of its conversion damages, TDECU asserted that it had been injured "in the amount of the fair market value of the Vehicle," or $46,150.00. TDECU sought declaratory relief stating that it has a superior interest in the Vehicle, and it requested attorney's fees under the declaratory judgment act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. TDECU subsequently filed an amended petition against real parties in interest Stephen Lee LaBar and Colleen Marie LaBar raising substantially identical

---

[3] The title for the Vehicle indicates that the "MAKE OF VEHICLE" is CARR and its "BODY STYLE" is "CT," which is a camping trailer. *See* https://www.txdmv.gov/sites/default/files/form_files/VTR-249.pdf (last visited Mar. 13, 2024).

2

claims. The LaBars filed an answer, an amended answer, and a second amended answer to TDECU's claims including a general denial, a verified denial, various affirmative defenses, and counterclaims. They asserted, *inter alia*, that they had been misidentified and that Alexander was the correct party to the suit.

On October 23, 2023, TDECU filed a "Motion for Protection from Discovery." According to this motion and its exhibits, the LaBars' counsel had emailed counsel for TDECU "requesting a copy of the loan documents and payments at issue with [Alexander] that show he still owes $47,000.00 since [the LaBars] were told by [Alexander] that there was no lien on the RV when they purchased it from him. These should have been disclosed . . . ." In response, counsel for TDECU advised the LaBars' counsel "that the production of customer records of a financial institution is governed by Texas Finance Code § 59.006 which provides the statutory process for a party to request the same during discovery." The LaBars' counsel subsequently sent correspondence to TDECU stating:

> Pursuant to Texas Business & Commerce Code Section § 9.210, a request is again made for the 1) documents that support your claim(s) of money owed in the amount of $46,150.00, 2) the original loan documents between TDECU and [Alexander], 3) all payments made towards [the] original loan and loan balance, and 4) any documents in which [TDECU] attempted to collect any money owed it by [Alexander]. You have fourteen (14) days to produce all documents requested per Texas Business & Commerce Code.

Counsel for TDECU responded by reiterating its position that the production of the requested documents was governed by the finance code and that the business and commerce code did not apply because it "pertains to a debtor's request for information." Counsel for TDECU requested the LaBars' counsel to advise if their requests would be withdrawn or if it should proceed with a motion for protection. The LaBars' counsel did not respond. Ultimately, TDECU requested the trial court to grant its motion for protection

3

from discovery on the basis that the LaBars had not complied with the requirements of the finance code.

The LaBars subsequently filed a "Response to Motion for Protection and Motion to Compel [TDECU's] Response to Mandatory TRCP 194.1(B) Document Disclosure." The LaBars stated that they purchased the Vehicle in good faith from Alexander, who advised them that "he had good title and that there were no liens or claims on the vehicle." They asserted that, "In an effort to avoid costly filings and attorney's fees, [the LaBars'] attorney requested documents regarding their complaint against [TDECU] via email," yet TDECU had failed to produce the documents "despite the legal requirements" of Texas Rule of Civil Procedure 194.2. *See* TEX. R. CIV. P. 194.2. The LaBars contended that they constituted debtors under the auspices of the business code and asked, if considered otherwise, "why are they being sued?" The LaBars sought to compel TDECU to produce loan documents between TDECU and Alexander; payment records or spreadsheets regarding payments made towards the original loan; loan balance documents; correspondence with Alexander regarding the debt or lien; and documents, demand letters, pleadings, lawsuits and judgments in which TDECU attempted to collect the money owed by Alexander.

The trial court held a hearing on these competing motions.[4] On December 19, 2023, the trial court signed an order denying TDECU's motion for protection. The order

---

[4] The LaBars correctly note that TDECU's petition for writ of mandamus lacks a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered in evidence, or a statement that no testimony was adduced in connection with the matter complained." TEX. R. APP. P. 52.7(a)(2). Neither the LaBars, TDECU, nor the text of the trial court's order suggest that the trial court's hearing was evidentiary in nature. Given that the matter at hand presents a question of law, we do not conclude that this omission is fatal to TDECU's request for relief. *See id.* R. 2. In other words, based on the specific circumstances of this case, TDECU has nevertheless furnished a record that is sufficient to support its claim for mandamus relief, and we overlook this omission. *See Walker*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding).

states that the "motion should be denied because [the LaBars] are 'debtors' under the provisions of the Texas Business and Commerce Code § 9.210, so Texas Finance Code § 59.006 does not apply."

This original proceeding ensued. By one issue, TDECU asserts that the trial court erred by "denying protection from discovery of a non-party consumer's financial records without requiring adherence to Texas Finance Code § 59.006 and compelling the discovery under Texas Business & Commerce Code § 9.210." This Court requested and received a response to the petition for writ of mandamus from the LaBars. The LaBars assert that "TDECU is subtly asking the Court to substitute its judgment for the trial court as to a factual issue underlying its ruling"—that the LaBars were "debtors"—and that we should not "disturb this determination." The LaBars further contend that Texas Rules of Civil Procedure 194.1 and 194.2 provide authority for the production. *See* TEX. R. CIV. P. 194.1, 194.2. In this context, the LaBars assert that "TDECU never availed itself of a protective opportunity—the trial court conducting an in camera review[—]before turning the documents over to the LaBars." They contend that an in camera review "would have allowed TDECU to protect itself from any concerns as to turning over records." TDECU filed a reply to the LaBars' response further asserting that finance code § 59.006 preempts § 9.210 of the UCC.

## II.    MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial

5

court abused its discretion, and (2) the relator lacks an adequate remedy by appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to guiding principles, or if it fails to analyze the law correctly or apply the law correctly to the facts. *In re Allstate Indem. Co.*, 622 S.W.3d at 875–76. We may not substitute our judgment for the trial court's judgment regarding factual matters that are committed to the trial court's discretion; however, the trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is not settled. *In re Shipman*, 540 S.W.3d 562, 565–66 (Tex. 2018) (orig. proceeding) (per curiam). Thus, under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by the evidence, but we review the trial court's legal determinations de novo. *Haedge v. Cent. Tex. Cattlemen's Ass'n*, 603 S.W.3d 824, 827 (Tex. 2020) (per curiam).

We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding); *In re Essex Ins.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. "Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss." *In re Acad., Ltd.*, 625 S.W.3d at 32 (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136). An appeal from a trial court's discovery order is not adequate if the appellate court would not be able to cure the

trial court's error on appeal. *In re Millwork*, 631 S.W.3d 706, 714 (Tex. 2021) (orig. proceeding) (per curiam). Further, when "discovery takes place under an improper order, the error cannot be rectified on appeal." *Id.*; *see, e.g.*, *In re Berry*, 578 S.W.3d 173, 182 (Tex. App.—Corpus Christi–Edinburg 2019, orig. proceeding) ("Mandamus is proper here because the [deposition] order is not permitted by the Texas Rules of Civil Procedure and because any discovery undertaken pursuant to the order cannot be undone.").

### III. LAW

The parties disagree regarding which law governs TDECU's obligation to produce the requested documents.[5] The LaBars rely on the rules pertaining to discovery and the UCC. The Texas Rules of Civil Procedure require a party to respond to requests for disclosure without the necessity of a request. *See* TEX. R. CIV. P. 191.1. The duty to disclose extends to "information and material," *see id.* R. 194.1(a), and requires the production of documents that the responding party has in its possession, custody, or control that it may use to support its claims or defenses. *See id.* R. 194.2(b)(6). Unless otherwise agreed or ordered, the responding party must make its initial disclosures within thirty days after filing its first answer or making its first appearance. *See id.* R. 194.2(a).

Under the UCC provisions that pertain to secured transactions, a "debtor" may make a request to a secured party for, as relevant here, an accounting. TEX. BUS. & COM. CODE ANN. § 9.210(a)(2). If a debtor makes a request for an accounting, the recipient is expected to respond to a request within fourteen days after receipt of the request. *Id.*

---

[5] Neither TDECU nor the LaBars argue that any other state or federal law applies. *See, e.g.*, 12 U.S.C.A. §§ 3401–3423 (comprising the Right to Financial Privacy Act). We note, in this regard, that § 59.006 is deemed a procedural rather than substantive rule. *See British Intern. Ins. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 594 (W.D. Tex. 2000) (concluding that § 59.006 "cannot take precedence over federal discovery rules regarding post-judgment discovery and compliance with subpoenas").

7

§ 9.210(b), (c), (d), (e). A debtor is entitled to a response for a request for an accounting without charge during any six-month period, but thereafter, "[t]he secured party may require payment of a charge not exceeding $25 for each additional response." *Id.* § 9.210(f). An official comment to § 9.210 explains the purpose of this section as follows:

> **Requests by Debtors Only**. A financing statement filed under Part 5 may disclose only that a secured party may have a security interest in specified types of collateral. In most cases the financing statement will contain no indication of the obligation (if any) secured, whether any security interest actually exists, or the particular property subject to a security interest. Because creditors of and prospective purchasers from a debtor may have legitimate needs for more detailed information, it is necessary to provide a procedure under which the secured party will be required to provide information. On the other hand, the secured party should not be under a duty to disclose any details of the debtor's financial affairs to any casual inquirer or competitor who may inquire. For this reason, this section gives the right to request information to the debtor only. The debtor may submit a request in connection with negotiations with subsequent creditors and purchasers, as well as for the purpose of determining the status of its credit relationship or demonstrating which of its assets are free of a security interest.

*Id.* cmt. 3; *see Prosper Fla., Inc. v. Spicy World of USA, Inc.*, 649 S.W.3d 661, 671 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (stating that "official UCC comments . . . are not legally binding, [but] they are persuasive authority concerning interpretation of the statute's language"). The UCC's limitation of the right to make requests under this section to "the debtor" represents "an attempt to accommodate the legitimate interests of creditors of, and prospective purchasers from, the debtor while limiting the intrusion upon the secured party and the debtor if the secured party were under a duty to disclose details of the debtor's financial affairs to any casual inquirer or competitor who may inquire." 66 TEX. JUR. 3d *Secured Transactions* § 115 (2024).

TDECU, in contrast, contends that discovery of the requested documents is governed by § 59.006 of the finance code. This section, entitled "Discovery of Customer

Records," expressly states that "[t]his section provides the exclusive method for compelled discovery of a record of a financial institution relating to one or more customers but does not create a right of privacy in a record." TEX. FIN. CODE ANN. § 59.006(a). Under this section, a financial institution shall produce a record in response to a request "only" if served with the request not later than the 24th day before the date that compliance with the request is required and the requesting party pays the financial institution's reasonable costs of compliance. *Id.* § 59.006(b)(1), (2). Further, if the customer is not a party to the proceeding, the requesting party must give notice to the customer and request the customer's written consent. *Id.* § 59.006(c). If the customer does not give written consent, the requesting party may file a motion seeking an in camera inspection of the requested records "as its sole means of obtaining access" to the records. *Id.* § 59.006(d). The court may then inspect the requested records to determine their "relevance to the matter" and can order redaction of those portions that it "determines should not be produced." *Id.* Further, the court "shall enter a protective order preventing the record that it orders produced" from disclosure to non-parties to the proceeding and from being "used for any purpose other than resolving the dispute before the tribunal." *Id*. If the financial institution's customer is a party to the proceeding, the customer bears the burden of preventing or limiting the financial institution's response to a record request. *Id.* § 59.006(e). The financial institution may not be required to produce records under this section before the later of the twenty-fourth day after the date of receipt of the record request, the fifteenth day after the date of receipt of a customer consent to disclose a record, or the fifteenth day after a court orders production after an in camera inspection. *Id.* § 59.006(f). The

9

court's ruling under this section is not a final order and is not subject to interlocutory appeal. *Id.* § 59.006(g).

## IV. ANALYSIS

The correct interpretation of a statute is a matter of law, which we review de novo. *Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 406 (Tex. 2022). "It is well settled that we are required to follow the plain meaning of a statute." *Freeman v. JI Specialty Servs., Inc.*, 505 S.W.3d 14, 20 (Tex. App.—Texarkana 2016, pet. denied*); see Equistar Chems., LP v. ClydeUnion DB, Ltd.*, 579 S.W.3d 505, 524 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The finance code expressly states that § 59.006 "provides *the exclusive method* for compelled discovery of a record of a financial institution." TEX. FIN. CODE ANN. § 59.006(a) (emphasis added). Black's Law Dictionary defines "exclusive" in relevant part as "[l]imited to a particular person, group, entity, or thing." *Exclusive*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, examining the plain meaning of the statute, compliance with § 59.006 is the *only* method to obtain the compelled discovery of customer records from a financial institution. *See* TEX. FIN. CODE ANN. § 59.006(a). By its terms, the finance code excludes the possibility that such discovery could be had by virtue of other methods. *See id.*

We examine the interaction between the provisions of the finance code and the rules of civil procedure. When a rule of procedure conflicts with a statute, "the statute prevails." *Johnstone v. State*, 22 S.W.3d 408, 409 (Tex. 2000) (per curiam) (explaining that a limited exception to this rule applies when "the rule has been passed subsequent to the statute and repeals the statute"); *see* TEX. GOV'T CODE ANN. § 22.004(a) (providing that procedural rules "may not abridge, enlarge, or modify the substantive rights of a

10

litigant"); *In re Geomet Recycling LLC*, 578 S.W.3d 82, 87–88 (Tex. 2019) (orig. proceeding) (stating that "procedural rules cannot authorize courts to act contrary to a statute"). Moreover, the civil practice and remedies code specifically explains that "[c]ivil discovery of a customer record maintained by a financial institution is governed by [§] 59.006, Finance Code." TEX. CIV. PRAC. & REM. CODE ANN. § 30.007. Thus, the statutory provision in the finance code regarding compelled discovery of customer records belonging to a financial institution prevails over the rules of procedure regarding discovery. *See id.;* TEX. FIN. CODE ANN. § 59.006; *Enviro Prot., Inc. v. Nat'l Bank of Andrews*, 989 S.W.2d 454, 455 (Tex. App.—El Paso 1999, no pet.) (construing the former version of TEX. CIV. PRAC. & REM. CODE ANN. § 30.007 and concluding that the specific statutory provision for seeking discovery of a financial institution's customer record "governs over other more general rules of civil procedure," thus, a subpoena that failed to comply with the statute "never possessed the authority of law").

We turn our attention to the LaBars' assertion that the trial court has made a factual finding that they are "debtors," and are thus entitled to request an accounting under § 9.210 of the UCC, and that we are required to give deference to this finding. *See* TEX. BUS. & COM. CODE ANN. § 9.210. Given the official comment to this section and related scholarly analysis, we doubt that "debtor" as used in this specific section is intended to include subsequent purchasers such as the LaBars. *See id.* cmt. 3 (titled "Requests by Debtors Only" and stating that "this section gives the right to request information to the debtor only" as distinguished from creditors and subsequent purchasers); 66 TEX. JUR. 3d *Secured Transactions* § 115 (2024). We further note that the trial court's finding was made in conjunction with construing a statute, which is subject to de novo review, and in

11

such a case we give no deference to the trial court's finding. *See Sirius XM Radio, Inc.*, 643 S.W.3d at 406. In any event, we need not reach this issue. The finance code provides the exclusive procedure for obtaining customer records from a financial institution, and this is so regardless of whether the LaBars constitute "debtors" for purposes of the UCC's provision regarding a request for an accounting. *See* Tex. Fin. Code Ann. § 59.006(a). In other words, the LaBars' status has no bearing on our analysis. And, even if we were to conclude otherwise and decide that we must reconcile two apparently conflicting statutory provisions, we would determine that § 59.006 of the finance code constitutes a special statutory provision which would control over the more general request for an accounting provided by § 9.210. *See* Tex. Gov't Code Ann. § 311.026; *see also* Tex. Bus. & Com. Code Ann. § 1.103 cmt. 3 (providing that other statutes may be controlling, even though they conflict with the UCC, "where the other statute was specifically intended to provide additional protection to a class of individuals engaging in transactions covered by the [UCC]").

We conclude that the trial court erred by denying TDECU's motion for protection and by requiring TDECU to provide the requested documentation when the provisions of the finance code were not followed. *See* Tex. Fin. Code Ann. § 59.006(a). Considering the facts and circumstances of the case, we further conclude that TDECU lacks an adequate remedy at law to address this error. *See In re Millwork*, 631 S.W.3d at 714; *In re Berry*, 578 S.W.3d at 182. We sustain the sole issue presented in this original proceeding.

## V. CONCLUSION

The Court, having examined and fully considered TDECU's petition for writ of mandamus, the LaBars' response, the reply, and the applicable law, is of the opinion that TDECU has met its burden to obtain relief. Accordingly, we lift the stay previously imposed in this case, we conditionally grant the petition for writ of mandamus, and we direct the trial court to vacate its December 19, 2023 order denying the motion for protection and to proceed in accordance with this memorandum opinion. Our writ will issue only if the trial court fails to promptly comply.

JAIME TIJERINA
Justice

Delivered and filed on the
26th day of March, 2024.